**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JAVAN O'CONNER, RAMIN PENA,
JONATHAN CEPADA, individually and on
behalf of all others similarly situated

     Plaintiffs,

vs.

AGILANT SOLUTIONS, INC D/B/A ASI
SYSTEM INTEGRATION, INC. and
TECHNICAL STAFFING PROFESSIONALS,
LLC

     Defendants.

Civil Action No. 1:18-cv-6937

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT FOR DAMAGES,**
**RESTITUTION AND INJUNCTIVE**
**RELIEF**

**JURY TRIAL DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys,

The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon

information and belief as to other matters, as follows:

## NATURE OF ACTION

1.  This is a collective and class action brought by Lead and Putative Class

Representative Plaintiffs Javan O'Conner, Ramin Pena and Jonathan Cepada (together, the

"Representative Plaintiffs" or "Lead Plaintiffs") and all opt-in and/or putative plaintiffs

(collectively, "Plaintiffs"), on their own behalf and on behalf of the proposed collective classes

and classes identified below.  Plaintiffs and the Putative Class and Collective Class members were

or are employed jointly by Defendant Agilant Solutions, Inc. D/B/A ASI System Integration, Inc.

("Agilant"), formerly organized under the name ASI System Integration, Inc., and Defendant

Technical Staffing Professionals, LLC., ("TSP") (collectively "the Defendants"), as both hourly

and salaried Field Service Technicians performing nonexempt work and are owed overtime compensation due to Defendants' unlawful practice of "paying to schedule" and requiring Plaintiffs to perform work outside of their regularly scheduled hours without compensation,  as well as failing to compensate Plaintiffs for the cost of necessary work-related tools and equipment, and illegal deduction of wages by separate transaction for workday training sessions and transportation. Defendants also failed to provide Plaintiffs and the Putative Class with wage notices at the start of their employment and accurate wage statements during their employment in violation of New York Labor Law ("NYLL") §195(3).

2.     Defendants denied Plaintiffs and the Putative Collective and Class overtime compensation, and made unlawful deductions by separate transaction from Plaintiffs' wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and New York Labor Law ("NYLL") § 650 *et seq*.  Defendants did this by, *inter alia*:

  i.    Requiring Field Technicians to work "off-the-clock" before their scheduled shifts and following the completion of their scheduled hours without compensation, a practice known as "paying to schedule";

  ii.   Failing to reimburse Plaintiffs for the cost of necessary work-related expenses, including on the job trainings and transportation during the continuous workday; and

  iii.  Failing to provide Plaintiffs and the Putative Class with a wage notice at the start of his/her employment and failing to provide accurate wage statements during their employment in violation of New York Labor Law ("NYLL") §195(3).

3.     The Putative Class and Collective Class of employees are similarly situated to the Plaintiffs under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations pursuant to Defendants' common policies and practices.

4.     The Collective Class is made of all persons who are or have been jointly employed by Defendants as Field Service Technicians assigned to worksites located throughout New York State at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Class Period") and who were subject to Defendants' policies of failing to pay overtime compensation for all hours worked over 40 in a given workweek.

5.     The Class is made up of all persons who are or have been jointly employed by Defendants as Field Service Technicians assigned to worksites located throughout New York State within the period of six years prior to the filing date of this Complaint (the "Class Period") and who were subject to Defendants' unlawful policy of "paying to schedule" and failing to pay overtime compensation for all hours worked over 40 in a given workweek, failing to pay straight time, failing to compensate Plaintiffs for the cost of necessary work related expenses and training, and Defendants' unlawful policy of failing to provide Plaintiffs with a wage notice and accurate wage statements reflecting all hours, including overtime hours worked.

6.     Plaintiffs seek relief for the Class pursuant to the applicable provisions of the NYLL and Collective Class under the FLSA, to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

## **PARTIES**

7.     Individual and Representative Plaintiff Javan O'Conner is a former Field Service Technician presently and at all relevant times residing in Brooklyn, New York. He was initially hired by TSP as a Field Service Technician on September 8, 2015, working at various worksites in Manhattan, before transitioning to a salaried employee for Agilant in approximately July of 2016, performing the exact same duties under the same supervision. Plaintiff O'Conner left

Agilant in approximately December of 2017. At all relevant times, Plaintiff was an "employee" within the meaning of all relevant statutes.

8.      Individual and Representative Plaintiff Ramin Pena is a former Field Service Technician presently and at all relevant times residing in Brooklyn, New York. He was initially hired by TSP as a Field Service Technician in September 2015, working at various worksites throughout the five boroughs, before transitioning to a salaried employee for Agilant in approximately January of 2016. Plaintiff Pena left Agilant in April 2017, performing the exact same duties under the same supervision. At all relevant times, Plaintiff was an "employee" within the meaning of all relevant statutes.

9.      Individual and Representative Plaintiff Jonathan Cepada is a former Field Service Technician, presently and at all relevant times residing in Brooklyn, New York. He was initially hired by TSP as a Field Service Technician in September 2015, working at various worksites in Queens, before transitioning to a salaried employee for Agilant in approximately 2016, performing the exact same duties under the same supervision. Plaintiff Cepada left Agilant in 2017. At all relevant times, Plaintiff was an "employee" within the meaning of all relevant statutes.

10.     Defendant Agilant Solutions Inc. is a New York Corporation with its principle places of business at 48 West 37th St. 4th Fl. New York, NY, 10018. Defendant Agilant Solutions Inc. presently does business as ASI Systems Integration, Inc. At all points within the Class and Collective Period, Defendant Agilant maintained a single Tax ID number, changing the formal name of the entity in filings with the Division of Corporations from ASI Systems Integration, Inc. to Agilant Solutions Inc. At all times during the Class and Collective Class Periods, Defendant Agilant Solutions Inc. used the trade or d/b/a "ASI Systems Integration, Inc."

At all relevant times, Defendant met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

11.     Defendant Technical Staffing Professions, LLC., is an Ohio Corporation with its principle place of business at 8454 Carriage Hill Dr Ne, Warren, OH, 44484-161. TSP regularly recruits Field Service Technicians throughout New York State and assigns them as Field Service Technicians with Agilant. At all relevant times, Defendant met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

12.     Upon information and belief, Defendants maintained control, oversight, and direction over their operations and employment practices.

13.     Defendants' 'gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

14.     At all times, Defendants TSP and Agilant each met the definition of Plaintiffs' "joint employer" given that the economic realities show that they were economically dependent on, and thus employed jointly by both the Defendants. [1]

### JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

---

[1] For purposes of employment discrimination, courts have applied the "Immediate Control" test to determine if a non-employer is actually a "joint employer". Under this test, such a relationship may be found to exist where there is sufficient evidence that the defendant had immediate control over the other company's employees," and particularly the defendant's control "over the employee in setting the terms and conditions of the employee's work." "Relevant factors" in this exercise "include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." Of these factors, "the extent of the employer's right to control the means and manner of the worker's performance is the most important factor." If such control is established, other factors "are then of marginal importance." See *Brankov v. Hazard*, 142 A.D.3d 445, 446, 36 N.Y.S.3d 133, 134 (N.Y. App. Div. 2016).

16.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 et seq.

17.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

18.     Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations which give rise to Plaintiffs' claims occurred in this District.

19.     This Court has personal jurisdiction over Defendant Aguilar because they reside in and routinely transact business in New York.

20.     This Court has personal jurisdiction over Defendant TSP because they routinely transact business in New York.

### WAGE AND HOUR COLLECTIVE CLASS AND CLASS ACTION FACTUAL ALLEGATIONS

**Plaintiffs were Jointly Employed by TSP and Agilant.**

21.     Defendant TSP provides IT staffing solutions through recruitment for direct hire, contract, and contract-to-hire options, as well as outplacement services.

22.     Defendant Agilant provides a range of IT services including consulting and integration, lifecycle sourcing, technology services, and asset disposition services.

23.     Plaintiffs were initially hired as hourly Field Service Technicians for TSP and were assigned by TSP as temporary employees for Agilant, a client of TSP, before being hired full time by Agilant as salaried employees in the same title.

24.     Plaintiffs fixed hardware - computers and printers – for the Department of Education (DOE") schools, as part of a contract Defendants had with the DOE to provide IT services.

25.     Plaintiff O'Conner's IRS 1095-C form lists TSP as having the same address as Agilant.

26.     Plaintiff and the class were required to obtain and send a TSP Overtime Approval Form to be paid overtime, and a signature from Agilant Managers was required, but the form was administered by TSP's Human Resources Department. The form contains a TSP header and a footer from ASI System Integration Inc., now known as Agilant.

27.     The exact nature of the work, management, clients, timekeeping system, and work location remained exactly the same after Plaintiffs transitioned employment from TSP to Agilant.

28.     The only substantive distinctions between working for TSP and working for Agilant was that TSP employees were paid hourly, while Agilant employees were paid on a salary basis. TSP employees were also not compensated for federal holidays.

29.     The management at TSP, and Agilant, shared the ability (i) to hire, fire and discipline Plaintiffs; (ii) establish Plaintiffs' working conditions; (iii) set Plainttiffs' hours; (iv) assign them specific projects, which they could not reject; (v) and (iii) impose daily supervision and direction over their work.

30.     Given the interrelated nature of operations between the two Defendant companies, including an interrelated HR function, the two Defendants act as a single enterprise and joint employer as those terms are understood under the FLSA, the NYLL, and relevant regulations.

31.     Mr. José Sanles is a Borough Manager at Agilant.

32.     Mr. Nicholas Perez is a Borough Supervisor at Agilant.

33.     Mr. Wesley Foster is also a Borough Supervisor at Agilant.

34.     Defendants employed Plaintiffs during the Class and Collective Class Periods.

35.     Defendant TSP paid Plaintiffs, and other members of the Putative and Collective Classes of Field Service Technicians an hourly wage rather than a salary and classified them as nonexempt for the purposes of the FLSA.

36.     Defendant Agilant paid Plaintiffs, and other members of the Putative and Collective Class of Field Service Technicians, by salary and misclassified them as exempt for the purposes of the FLSA.

37.     Field Service Technicians are not exempt under the FLSA under either the administrative, professional, or computer employee exemptions because their job duties consist primarily of manual labor and repetitive tasks, such as fixing computer and printer hardware.

**Defendants' Unlawful "Off the Clock" Policy of "Paying to Schedule"**

38.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

39.     At all times during the Collective Class and Class Periods, Field Service Technicians employed by TSP were required to work from 8:00am to 5:30pm.

40.     At all times during the Collective Class and Class Periods, Field Service Technicians who transitioned to Agilant were contractually scheduled to work from 8:30am to 5:30pm.

41.     Plaintiffs were required to manually input the hours they worked on any given workday in Defendants' Paycom software.

42.     Borough Managers would verify whether hours entered into the software were correct before sending the hours to payroll.

43.     Plaintiffs were told by managers that that they were supposed to work 8 hours for each workday, totaling 40 hours per workweek, and could not enter more time for hours worked beyond 40 hours unless it was approved.

44.     According to the ASI System Integration, Inc. Employee Handbook, a manager "must approve all overtime in advance, in writing. Nonexempt employees will be paid a rate of time and one and one half their regular hourly rate for hours worked over 40 in a week. ASI System Integration, Inc. will issue overtime pay on the regular payday for the period in which overtime hours were worked."

45.     The TSP Handbook did not explicitly mention overtime procedures. Field Service Technicians were required to fill out the TSP Overtime Approval Form, which required a signature from Agilant Managers.

46.     As a matter of common policy, Defendants would only approve and pay overtime for certain projects, and not for "incidental overtime" spent working on their regularly assigned projects which took them past the end of their regularly scheduled shift, or on administrative tasks such as pre-shift preparations for the work day, and creating post-shift tech routes.

47.     Hours entered into the software that went beyond regularly scheduled 8-hour workweek would not be paid at all if not approved in advance by the Borough Manager.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Field Service Technicians to Work Before and After Their Shifts**

48.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

49.     Pursuant to Defendant Agilant's common policies, Plaintiffs, even after transitioning from TSP, were asked by Borough Managers to arrive at 8:00am despite the fact that their normal shift did not start until 8:30 AM.

9

50.     If Plaintiffs did not send an onsite email to their Borough Supervisor by 8:00am, they would be considered late.

51.     Further, at the end of their day, Plaintiffs were required to work in excess of 40 hours, from home, creating tech routes for the following day and performing tasks, or waiting for further instruction.

52.     For example, in the borough of Manhattan, dispatch was required at 5:30pm, after Plaintiffs were "off the clock" and not on the timekeeping system, to take all the "tickets", or tasks, that were completed by Field Service Technicians for the work day, and to send any remaining tickets that had yet to be done to Supervisor Perez. Perez would then produce a schedule report specifically for Field Service Technicians. Field Service Technicians would then utilize the schedule report to make a tech route, which describes what tasks they would be doing for the next work day.

53.     Perez would receive the schedule report from dispatch at approximately 6pm well after the end of their shift.

54.     Field Service Technicians would receive a schedule report tailored to them at approximately 7 PM.

55.     Field Service Technicians would spend between 1-2 hours creating the tech routes and performing associated work every workday off the clock and without pay.

56.     Plaintiffs were not compensated for the time they spent waiting for Perez to send them a scheduling report or for creating the tech routes.

57.     The exact process of creating tech routes varied minimally from borough to borough.

58.     When Plaintiffs worked at home to create tech routes, those hours were in excess of 40 per week.

59.     When Plaintiffs were employed under TSP, the same procedures were followed.

60.     Further, TSP employees were not paid for federal holidays. As such, Plaintiffs worked less than 40 hours for the weeks that such holidays took place, but nonetheless were uncompensated for the time they spent creating tech routes in those weeks.

61.     With the exception of the days they were on vacation or otherwise absent from work, Plaintiffs O'Conner, Pena, and Cepada worked "off the clock" performing these duties for at least 1 hour a day, often more, while employed during the Class and Collective Class Periods, and they were not compensated for this time.

62.     Defendants' managers explicitly enforced the policy with the awareness that the work performed would not be compensated, which was reflected in the fact that managers approved the tech routes that Plaintiffs were performing at home and also approved Plaintiffs' payroll each week.

**Defendants' Unlawful Policy of Requiring "Deduction by Separate Transaction" From Plaintiffs' Wages for the Cost of Necessary Tools and Equipment**

63.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

64.     Plaintiffs were required to purchase tools and equipment in order to conduct their job efficiently.

65.     Upon starting at TSP, Plaintiffs were strongly recommended by Angel Morillo, a Borough Manager for Agilant, to purchase the follow item(s) with their own money:

> a) Hard drives;
> b) Flash drives;
> c) Anti-static mat and wrist strap;

    d)  Magnetizer/demagnetizer;
    e)  Small adjustable wrench;
    f)  Multimeter;
    g)  Power supply tester;
    h)  IDE/SATA to USB adapter;
    i)  Video Adapters: DVI to VGA (for PC), mini VGA to VGA, mini display to VGA, mini DVI to VGA;
    j)  Ethernet cable and USB A to B cables;
    k)  CD (hirensBCD, Lenovo Diagnostic (hard drive test, software test), ghost)
    l)  Tools: Stubby No 2., Phillips No. 1, 2, 0,00,000, Phillips, Torx No. 6,8,9,10,15;
    m)  Apple Tools: Suctions cups, tri-wing screw driver, pentalobe screw driver for MacBook Pro and MacBook Air, black stick, putty knife;
    n)  Flashlight;
    o)  Microfiber Cloth.

66.    Plaintiffs were also required to purchase their own bookbags to carry equipment, and proper work attire.

67.    After transitioning to Agilant, Plaintiffs continued to purchase equipment necessary to perform their work and were not compensated for it.

68.    Without the aforementioned tools, it would have been impossible for Plaintiffs to perform their jobs.

69.    Upon belief, Plaintiff O'Conner's combined total of purchases for items bought specifically for work without reimbursement totaled $511.13.

70.    Upon belief, Plaintiff Pena's combined total of purchases for items bought specifically for work without reimbursement totaled $157.39

71.    Plaintiffs were also required to pay for their own transportation in between worksites without reimbursement.

72.    Plaintiffs were only reimbursed for transportation associated with MetroCard expenses and not for Ubers.

73.     Plaintiff O'Conner spent a combined total of $579. 82, spanning March 3, 2016 through June 11, 2017 Uber trips taken during the work day to get from one worksite to another.

**Defendants' Unlawful Practice of "Deduction by Separate Transaction" for the Cost of Trainings During the Continuous Workday**

74.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

75.     Plaintiffs were coerced into signing agreements for training sessions at the threat of disciplinary action if they did not do so.

76.      As per Defendants' training contract agreements, trainings cost a certain amount for the Companies to stage, and if the Plaintiff employees did not leave the company within 6 months of signing the contract, then they would not have to reimburse Defendants' for the cost of the training on a pro rata basis.  However, if they did leave, they were required under the contract to reimburse Defendants for the cost of the trainings.

77.     Trainings done while Plaintiffs were employed by TSP were conducted by Agilant employees.

78.     The trainings were for the sake of gaining additional skills during their employment; the trainings were not pre-employment.

79.     The trainings were necessary for Plaintiffs to improve their troubleshooting and technical skills, which benefited the clients and Defendants who billed the clients hourly for the Plaintiffs' services.

80.     At times, training sessions consisted of nothing more than PowerPoint Slides.

81.     When Plaintiff Pena asked the facilitator for one of the training sessions how the monetary value of the training sessions was calculated, he was not ultimately ignored.

82.     Plaintiff O'Conner signed a contract for a skill-development training session "worth" $500 in August of 2017.  The training was not pre-employment.

83.      Plaintiff O'Conner was not told he had to sign a training contract until after the training was completed.  Under pressure, Plaintiff O'Connor signed the contract, but indicated his protest in doing so.

84.     Within 6 months of attending the training session, Plaintiff O'Conner resigned on December 6, 2017.

85.     $500 was deducted from Plaintiff O'Conner's second to last pay check to recoup the cost of the August 2017 training.

86.     Plaintiffs were additionally required to attend a companywide meeting after work hours at New Hyde Park approximately once a month.

87.     Regardless of which borough Plaintiffs were working in, they were still required to commute to New Hyde Park, where bus service is sparse during the evening.

88.     Plaintiffs were not compensated for the time spent at these meetings, nor were they compensated for the travel during the continuous workday spent getting to the meetings.

89.     Plaintiffs were not reimbursed for transportation costs in connection to these meetings unless they were associated with MetroCard costs.

90.     New Hyde Park is most accessible via the Long Island Rail Road.

**Defendants Failed to Provide Plaintiffs with a Pay Notice or Accurate Wage Statements**

91.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

92.     Defendants failed to provide Plaintiffs with a Pay Notice as required by the Wage Theft Prevention Act at the start of their employment, or at any time thereafter, which indicated

what their regular rate of pay was, what their hours of work were, and other information required by statute.

93.     Defendants also failed to include within payroll records Plaintiffs' compensation for hours worked outside of the standard shift between 8:30am and 5:30 PM because Defendants had no system for recording it and never had any intention of paying it.

94.     As a result of Defendants' failure to maintain accurate payroll records that reflect that actual amount of time that Plaintiffs' worked, Defendant failed to furnish Plaintiffs and members of the Class with accurate and/or complete wage statements on each payday, that included the total hours worked each week and the full amount of wages earned during the pay period.

## FLSA COLLECTIVE ACTION ALLEGATIONS

95.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

96.     Defendants employed Plaintiffs during the Collective Class Period.

97.     Defendant Agilant classified Plaintiffs and Members of the Collective Class as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary, but failed to record and pay them for all hours worked, only for those hours the they were scheduled to work.

98.     Upon information and belief, there are approximately more than a hundred current and former Field Service Technicians employed by Defendants who are similarly situated to Plaintiffs and who were denied overtime compensation.

99.     The Lead Plaintiffs represent other Field Service Technicians and are acting on behalf of Defendants' current and former Field Service Technicians' interests as well as their own interests in bringing this action.

100.    At all times during the Collective Class Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime compensation for all hours worked in excess of 40 hours in a workweek.

101.    Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

**Collective Class:**     All individuals employed by Defendant as Field Service Technicians, in worksites throughout New York State at any point during the Collective Class Period who earned but were not paid lawful FLSA overtime compensation for hours worked over 40 in a given workweek during the Collective Class Period based on the practices alleged herein.

102.    Plaintiffs' Collective Class was subject to a common unlawful policy enforced by Defendants of "paying to schedule" by forcing Plaintiffs to work "off the clock" and without overtime premium compensation for work performed which exceeded the Plaintiffs' scheduled workweek, and refusing to provide necessary supervisor approval to pay the hours worked.

103.    As such, the Named Plaintiffs and the Collective Class suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Class Period.

104.    Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective Class, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendant suffered or permitted them to work in excess of 40 per workweek.

105.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

106.    Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class.

107.    There are numerous similarly situated current and former employees of Defendant who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

108.    Those similarly situated employees are known to the Defendant and are readily identifiable through Defendants' records.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

109.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

110.    Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

**Proposed Class:**    All individuals employed by Defendant as Field Service Technicians in worksites throughout New York State at any point during the Collective Class Period who earned but were not paid lawful NYLL overtime compensation for hours worked over 40 in a given workweek, not paid "straight time" wages, and were not reimbursed for the cost of necessary work-related expenses during the Collective Class Period, and who were not issued a pay notice and accurate wage statements as required by the WTPA, based on the practices alleged herein.

111.    Plaintiffs' Rule 23 Class was subject to Defendants' commonly enforced unlawful policy of "paying to schedule" whereby Defendants forced Plaintiffs to work "off the clock" for work performed which exceeded the Plaintiffs' scheduled workweek, and refused to provide

necessary supervisor approval to pay the overtime hours worked beyond 40 in any workweek,, (ii) Defendants' policy and practice of "deduction by separate transaction" for the cost of Plaintiffs' necessary work equipment, training, and transportation, and (iii) claims for failure to provide pay notices WTPA at the start of employment and wage statement violations for Defendants' failure to provide Plaintiffs' with accurate wage statements on each payday that include the information required by NYLL §195(3), including the correct  number of hours worked during the pay period.

112.    Further, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Plaintiffs and the putative class at least one and one-half times their regular rate of pay for hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

113.    Numerosity:   The Proposed Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendant employed over one hundred individuals who satisfy the definition of the Proposed Class.

114.    Typicality:    Plaintiffs' claims are typical of those of the Proposed Class.  The Representative Plaintiffs are informed and believe that, like other Field Service Technicians, the Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein articulated above.

115.    Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

116.    Adequacy:    The Representative Plaintiffs will fairly and adequately protect the interests of the Proposed Class and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

117.    Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to:

    a.   Whether Defendants unlawfully failed to pay lawful overtime compensation for all hours worked over 40 in a workweek for those violations stated above;

    b.   Whether those violations were pursuant to a common policy or practice applicable to all class members;

    c.   Whether Defendants unlawfully failed to pay the state statutory minimum wage to members of the Proposed Class in violation of the NYLL;

    d.   Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

    e.   Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Proposed Class;

    f.   Whether those violations were pursuant to a common policy or practice applicable to all class members;

    g.   Whether Defendants employed Plaintiffs and the Proposed Class within the meaning of New York law;

    h.   The proper measure of damages sustained by the Proposed Class; and

    i.   Whether Defendants' actions were "willful."

118.    The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive

of the interest of other individuals not party to this action, impeding their ability to protect their interests.

119.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the Proposed Class the wages to which they are entitled. The damages suffered by the individual Proposed Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

120.    Plaintiffs intend to send notice to all members of the Proposed Class to the extent required by Rule 23.  The names and addresses of the Proposed Class are available from Defendants.

121.    During the class period, and upon information and belief, Plaintiffs each worked more than 1 hour of overtime-eligible work during the class and collective class periods for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay under NYLL or the FLSA.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

122.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

123.    Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  Plaintiffs written consent forms are attached hereto.  Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

124.    At all relevant times, Defendant TSP has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.  At all relevant times, Defendant has employed and continue to employ employees, including Plaintiffs, and the Collective Class members.  At all relevant times, upon information and belief, Defendant has gross operating revenues in excess of $500,000.00.

125.    At all relevant times, Defendant Aguilar has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.  At all relevant times, Defendant has employed and continue to employ employees, including Plaintiffs, and the Collective Class members.  At all relevant times, upon information and belief, Defendant has gross operating revenues in excess of $500,000.00.

126.    The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

127.    During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective Class members worked in excess of forty hours per workweek without lawful overtime compensation.

128.    Despite the hours worked by Plaintiffs and the Collective Class members, Defendants willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay them overtime compensation.

129.     Plaintiffs were not paid FLSA mandated overtime compensation uniformly and based on the policies and practices articulated above.

130.     Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq.

131.     Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective Class.

132.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

133.     Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

134.     Plaintiffs, on behalf of themselves and the Collective Class, seek recovery of their attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
**(Failure to Pay Lawful Overtime Compensation in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)**

135.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

136.     At all relevant times, Plaintiffs were jointly employed by both Defendants, who are employers within the meaning of the New York Labor Law.

137.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

138.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the overtime wages to which they were entitled under the New York Labor Law.

139.    By Defendants' failure to pay Representative Plaintiffs and the Rule 23 Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

140.    By Defendants' failure to pay Plaintiffs and the Rule 23 Class Members at least one and one-half times the minimum wage for all hours worked 40 in any workweek during the class period, they have willfully violated NYCRR 142-2.2 and NYLL §§ 191 and 193.

141.    Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR THE THIRD CAUSE OF ACTION
**(Failure to Pay "Straight Time" Wages in Violation of NYLL Articles 6 and/or 19)**

142.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

143.    At all relevant times, the Representative Plaintiff and Rule 23 Class Members were employees and the Defendants have been employers within the meaning of the New York Labor Law.

144.    The provisions of Articles 6 and 19 of the New York Labor Law and their supporting regulations apply to Defendants.

145.    Defendants knowingly, willfully, and in bad faith failed to pay the Representative Plaintiff and Rule 23 Class Members at their agreed-upon, regular rate for all hours worked under forty in a workweek ("straight time" or "gap time" wages).

146.    By failing to pay the Representative Plaintiff and Rule 23 Class Members their straight time wages, Defendants violated NYLL Articles 6 and/or 19.

147.    Due to Defendants' willful violations of the New York Labor Law, the Representative Plaintiff and Rule 23 Class Members are entitled to recover from Defendants the full amount of underpayment, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, as provided by NYLL § 198.

### AS AND FOR THE FOURTH CAUSE OF ACTION
**(Failure to Pay for Necessary Work-Related Expenses in Violation of NYLL §§§191 and 193 and 12 NYCRR 194-4.5)**

148.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

149.    At all relevant times, Plaintiffs were employees and the Defendant has been an employer within the meaning of the New York Labor Law and New York Code of Rules and Regulations.

150.    Defendants failed to reimburse Plaintiffs for the cost to purchase equipment required to be used during working hours. Specifically, Defendant required Plaintiffs to purchase their own aforementioned tools and equipment.

151.    Defendants also failed to reimburse Plaintiffs for their transportation costs between workplaces that were not associated with MetroCard use.

152.    Defendants also deducted wages of Plaintiffs who attended aforementioned training sessions and left Defendants within the time period specified in respective training contracts.

153.    Section 193 prohibits deductions from employee's wages unless the deductions are (1) expressly authorized by and for the benefit of the employee and (2) limited to the enumerated categories of permissible deductions.

154.    Defendants made deductions from the wages of the Plaintiff and the putative Class for purposes which are not permissible under the statute.

155.    The deductions made by Defendants were not made with the authorization of the employee and were not for their benefits.

156.    12 NYCRR 194-4.5 expressly prohibits deductions for the purchase of tools, equipment and attire required for work.

157.    Due to Defendants' violations of New York Labor Law, Plaintiff and the Rule 23 Class Members are entitled to recover from Defendants the cost of all reimbursement expenses associated with paying out of pocket to purchase required tools, equipment and proper work attire.

158.    By Defendants' practice of making unlawful deductions from Plaintiff and the Class' earned wages, Plaintiff and the members of the class were damaged in an amount to be proven at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Furnish Accurate Wage Statements and Provide Pay Notices in Violation of NYLL §195)

159.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

160.    At all relevant times, Plaintiffs were jointly employed by Defendants who both are employers within the meaning of the New York Labor Law.

161.    The recording keeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

162.    Defendants did not provide Plaintiffs and members of the Rule 23 Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

163.    Defendants did not provide Plaintiffs and the members of the Rule 23 Class with a written notice of their rate of pay, regular payday, and such other information as required by NYLL § 195(1).

164.    NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

165.    As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on behalf of themselves and all members of the putative class and collective actions, prays for relief as follows:

A.    That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.    That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the Class;

C.    That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiffs and the Collective Class;

D.    That Defendants' violations as described above are found to be willful;

E.    An award to Plaintiffs and the Collective Class and Class Members for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F.      That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

G.      That Plaintiffs' counsel and Plaintiffs Javan O'Conner, Ramin Pena and Jonathan Cepada can adequately represent the interests of the class as class counsel and class representative, respectively.

H.      An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

I.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues so triable.

DATED:  August 1, 2018

THE LAW OFFICE OF CHRISTOPHER Q. DAVIS, PLLC

_____

Christopher Q. Davis (CD-7282)
The Law Office of Christopher Q. Davis, PLLC
225 Broadway, Suite 1803
New York, New York 10007
646-430-7930