UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
Javan O'Conner, Ramin Pena,
Jonathan Cepeda, Shawn Griffith
Individually and on behalf of all others similarly
Situated,

                              Plaintiffs,

                    v.                                          18-CV-6937 (GHW)

Agilant Solutions, Inc. d/b/a ASI
System Integrations, Inc.,

                              Defendant.
------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO PRELIMINARILY CERTIFY A COLLCETIVE ACTION and REQUEST TO TOLL**


Raab, Sturm & Ganchrow, LLP.

Attorneys for Defendant

2125 Center Avenue, Suite 100

Fort Lee, New Jersey 07024

201-292-0150

Fax: 201-292-1052

isturm@rsgllp.com

# **TABLE OF CONTENTS**

Page No.'s

Table of Authorities…………………………………………………………………II

Preliminary Statement……………………………………………………………… 1

FACTS………………………………………………………………………………4

ARGUMENT………………………………………………………………………...4

POINT I-       Preliminary Certification of a Collective Action is Discretionary……………...4

POINT II-      The evidence in support is insufficient to allege, much less support, a claim
               for overtime……………………………………………………………………..8

POINT III-     Flex Time Is Approved by the United States Department of Labor………….. 12

POINT IV-      Plaintiffs cannot meet the test for preliminary collective certification……….. 14

POINT V-       Equitable tolling of the statute of limitations and the proposed notice are
               not appropriate………………                                                      21

CONCLUSION………………………………………………………………….. 25

I

# TABLE OF AUTHORITIES

Cases                                                                                     Page No.'s

Aldous v. Honda Motor Co., Ltd., No. 94-CV-1090, 1996 U.S. Dist. LEXIS 7855,
1996 WL 312189, at *1 (N.D.N.Y. May 30, 1996)                                                 20

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692, 66 S. Ct. 1187 (1946)                 9

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)              8

Auffray v. FXFL, LLC, S.D.N.Y. Docket No. 15-cv-9379-GHW, 2016 U.S. Dist.
LEXIS 159475 at * 5-6 (S.D.N.Y. Nov. 16, 2016)                                                7

Barfield v. N.Y. City Health and Hospitals Corp., 2005 U.S. Dist. Lexis 28884 * 3
(S.D.N.Y. 2005)                                                                               6

Basco v. Wal-Mart Stores, Inc., No. 00-3184, 2004 U.S. Dist. LEXIS 12441
(E.D. La. July 1, 2004)                                                                       16

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))    8

Bowens v. Atl. Main Corp., 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008)                             23

Briceno v. USI Servs. Grp., Inc. No. 09 Civ. 4252. 2012 U.S. Dist. LEXIS 144866, 2012
WL 4511626, at *6 (E.D.N.Y. Sept. 28, 2012)                                                 19,20

Briggs v. U.S., 54 Fed. Cl. 205 (Fed. Cl. 2002)                                              6

Corbin v. Time Warner Entertainment, 821 F. 3d 1069, 1080 9th Cir. 2015)                     10

Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971 at *3                                 14

De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 373 (3d Cir. 2007)                            9

Delijanin v. Wolfgang's Steakhouse, Inc., No. 18-CV-7854 (RA) (KHP),
2019 U.S. Dist. LEXIS 67948 at * 11 - 12 (S.D.N.Y. Apr. 22, 2019)                          5,22

Diaz v. Electronics Boutique of America Inc., Western District of New York,
Docket No. 04-CV-840E, 2005 U.S. Dist. Lexis 30382at * 16 (October 17, 2005)                 15

Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)           5

Fernandez v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 124692 at * 47-48
(S.D.N.Y. Aug. 27, 2013)                                                                                      14

Flores v. Osaka Health Spa, Inc., 2006 U.S. Dist. Lexis 11378 * 7-8 (S.DN.Y. 2006)          5

Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003)      23

Hinojos v. Home Depot, Inc., No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434, 2006
WL 3712944, at *3 (D. Nev. Dec. 1, 2006)                                                              20

Hinterberger v. Catholic Health Sys., 299 F.R.D. 22, 37 (W.D.N.Y. 2014)                      19

Hoffmann-La Roche v. Sperling, 493 U.S. 165, 110 S. Ct. 482 (1989)                            7

Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)                              14

Hosking v. New World Mortg., Inc., 602 F. Supp. 2d 441 (E.D.N.Y. 2009)                        22

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007)             14,22

Jacob v. Duane Reade, Inc., No. 11-CV-0160(JPO), 2012 U.S. Dist. LEXIS 11053, 2012 WL
260230, at *4 (S.D.N.Y. Jan. 27, 2012)                                                              12

Jianjun Chen v. 2425 Broadway Chao Rest., LLC, No. 1:16-cv-5735-GHW, 2017 U.S. Dist.
LEXIS 92149 (S.D.N.Y. June 15, 2017)                                                                   8

Kuebel v. Black & Decker Inc., 643 F. 3d 352, 361 (2d Cir. 2011)                              19

Lama v. Malik, 58 F. Supp. 3d 226 (E.D.N.Y. 2014)                                            23

Lawrence v. City of Philadelphia, 2004 U.S. Dist. Lexis 8445 (E.D. Pa. 2004)                15

Levinson v. Primedia Inc., 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003)               6

Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007)             14

Manners v. State, 727 N.Y.S.2d 547, 548 (App. Div. 3d Dep't 2001)                            11

Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 61 (E.D.N.Y. 2011                            23

Morales v. Plantworks, Inc., 2006 U.S. Dist. LEXIS 4267 at * 6 – 7 (S.D.N.Y. Feb. 1, 2006)    5

Moran v. GTL Const., LLC,  No. 06CV0168, 2007 U.S. Dist. LEXIS  55098, 2007 WL
2142343, at *3 (S.D.N.Y. July 24, 2007)                                                              22

Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010)                                   5,7, 14

Penthouse Exec. Club Comp. Litig. S.D.N.Y. Docket No. 10-CV-1145, 2010
U.S. Dist. LEXIS 114743 at footnote 4 (S.D.N.Y. Oct. 26, 2010)           22, 23

Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278, 284 (N.D. Tex. 2008)     20

Raniere v. Citigroup, Inc., 827 F. Supp.2d 294, 320 (S.D.N.Y. 2011)          5

Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 64 (2d Cir. 1997)      13, 20

Romero v. H.B. Auto. Grp., Inc., 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012)    5

Sharma v. Burberry Ltd., 52 F. Supp. 3d 443 (E.D.N.Y. 2014)          23

Simcuski v. Saeli, 44 N.Y.2d 442, 451, 377 N.E.2d 713, 717, 406 N.Y.S.2d 259, 264 (1978)  23

Smith v. Sovereign Bank Corp., Inc., 2003 U.S. Dist. Lexis 21010 (E.D. Pa. 2003)    6

Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 88 L. Ed.
949, 64 S. Ct. 698 (1944)                                 13

Vasto v. Credico (USA) LLC., No. 15-cv-9298 (PAE), 2016 U.S. Dist. LEXIS 60158,
2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)           21

White  v. Baptist Mem'l Helath Care Corp., 699 F.3d 869,876 (6th  Cir. 2012)    19

White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002)      16

Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456 (S.D.N.Y. 2011)       20

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO PRELIMINARILY CERTIFY A COLLCETIVE ACTION and REQUEST TO TOLL**

Agilant Solutions, Inc. d/b/a ASI Systems Integration, Inc., ("Defendant" or "Agilant"), by their attorneys, respectfully submits the following memorandum of law in opposition to Plaintiffs', Javan O'Conner ("O'Conner"), Ramin Pena ("Pena"), Jonathan Cepeda ("Cepeda") and Shawn Griffith ("Griffith") in their individual and alleged collective and/or class action statuses, and opt in plaintiffs, Rashood Earle ("Earle") and Khazaizal Tamin McGann ("McGann") (collectively referred to herein as "Plaintiffs"), motion for preliminary collective certification and request to toll:

**PRELIMINARY STATEMENT**

Plaintiffs have continually referred to the practices alleged as working "off the clock". Problematic is the fact that, if the Court begins its inquiry under the false labeling of the work performed by Agilant's employees, there is an inherent bias. Rather, the situation at hand falls into the Department of Labor approved practice of flexible scheduling. As the U.S. Department of Labor advises:

> A flexible work schedule is an alternative to the traditional 9 to 5, 40-hour work week. It allows employees to vary their arrival and/or departure times. Under some policies, employees must work a prescribed number of hours a pay period and be present during a daily "core time." The Fair Labor Standards Act (FLSA) does not address flexible work schedules. Alternative work arrangements such as flexible work schedules are a matter of agreement between the employer and the employee (or the employee's representative).

(https://www.dol.gov/general/topic/workhours/flexibleschedules). Today, over one quarter of working people have the ability to work on a flex time schedule. (https://www.bls.gov/news.release/flex.nr0.htm)  It is incongruous to claim, as Plaintiffs do, that such a system is per se unlawful under the FLSA.

1

As will be demonstrated below, there is a virtual impossibility for the Plaintiffs to credibly establish the existence of a scenario that could envision the establishment of facts of an admissible nature sufficient to support a collective scenario constituting violations of the FLSA. Based upon the factual presentation of Plaintiffs, it is virtually impossible to describe a potential class of similarly situated employees. Agilant recognizes the Court's admonition issued at the initial conference concerning the low hurdle that need be established to preliminarily proceed on a collective basis. However, the common consensus is that ultimately class and collective final certification is rarely granted in the context of "off the clock" claims. As such, if collective litigation will not be approved down the road, a fortiori, the matter should not proceed initially as a preliminary collective matter.

The indisputable evidence establishes that the work day begins upon the arrival at the first assignment. No claims are being made for travel time to the first assignment of the workday. The work day ends upon departure from the final assignment of the day. No claims are made for travel times from the last assignment of the work day. (See page 7 of transcript of conference held on May 2, 2019 before Your Honor.) The Plaintiffs are employed as computer field technicians that provide computer maintenance and repair services primarily for and at the New York City Board of Education schools and facilities located in the five boroughs of New York City. The Field Technicians go to the various schools within their respective assigned boroughs to troubleshoot and then repair the computers of the Board of Education. Agilant maintains records of reported times of arrival and departure from each school assignment. The Field Technicians' first assignments of the day are almost exclusively to schools within the borough in which the employee is assigned. The technicians almost always finish the last school assignment and are then off the clock. Occasionally the technician returns to the office to

retrieve parts needed for the following day.  In such cases, the days end when the technicians leaves with the parts.  This block of hours is generally significantly less than seven hours per day.  This period also includes a one hour meal break. The employees work a five day week, Monday through Friday.  Employees are mandated to report the number of hours worked each week.  Without exception, the employees are paid for the total number of hours that each employee reports as having worked. Full payment is made even if less than the full eight hours were actually worked. (See Affirmation of Joseph Roman)  As per Federal guidelines, employees are left approximately two hours per day of flex-time to accomplish the tasks of which they now contend were performed off the clock.  The records establish that the Plaintiffs collectively arrived late, after their official starting times, no fewer than 721 times and clocked out early, before their quitting times, no fewer than 2,388 times. (See Exhibit "A" to Roman Affirmation.) Yet, Plaintiffs claim to be entitled, automatically to overtime payments for alleged work unilaterally performed after hours.  (See generally Plaintiffs' four affidavits in support of the motion.)  In order to make a finding to the contrary to the above facts, as Plaintiffs now ask, the Court will have to acknowledge that each Plaintiff lied on his reported hours and that the records maintained by Agilant as a result of these false reports are false.

Supportive of Agilant's position is the very telling omission of any supporting facts. Plaintiffs collectively assert: "Field Service Technicians would spend between 1-2 hours creating the tech routes and performing associated work every workday off the clock and without pay." (See par. 60 of the Amended Complaint).  Plaintiffs do not expand about what they mean when they say they spend up to two hours per day "creating tech routes and performing associated work."  What exactly needs to be done that takes two hours to decide how one gets to a school which each employee has already visited numerous times. Plaintiffs' four affidavits submitted in

3

support of the motion are of no substantive help, as they are conclusory and fail to identify any specific incident of having to work beyond each Plaintiff's respective flexible hours. Moreover, the after hour email, is merely a summary of the directions given during the regular work day.

While the case law suggests that Plaintiffs need only present a modest factual showing, the facts must be "facts", not conclusory nor self-serving.  The conclusory statements that have been submitted in support of the application, demonstrate that a collective action cannot be carved out in the scenario at hand without creating an almost infinite number of classifications to address each Plaintiff's, and each potential future collective participant's claims.  Plaintiffs acknowledge the impossibility of having this matter addressed on a collective basis by inserting so many variables, that a common thread can never be had.  In Plaintiffs' opening remarks in their Memorandum of Law, they posit no less than four separate variables, that do not occur every day and cannot be incurred on an automatic basis by each and every member of the proposed collective group.    Plaintiffs' actual claims are conclusory and conclusory evidence of off the clock work allegations is insufficient to establish a prima facie violation of the FLSA.  As will be demonstrated, this is the case where the Court should absolutely utilize its discretion and not permit a preliminary collective action to be certified.

## FACTS

The facts are set forth in the accompanying affirmations of Joseph Roman and Mohammad Ilyas, and the exhibits to the affirmations.

## ARGUMENT

### Point I – Preliminary Certification of a Collective Action is Discretionary

Section 216 (b) provides that proceeding under a collective scenario is permissive and far from mandatory.  As such, the District Courts of the Southern District of New York summarized the following policies:

> Section 216(b) of the FLSA provides that  parties suing under Sections 206 and 207 **may** proceed "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). …The dissemination of notice in an FLSA collective action is in fact a case management tool that courts **may** employ in "appropriate cases," including where notice will facilitate swift and economic justice. See <u>Myers</u>, 624 F.3d at 555 n.10.

(Emphasis added) <u>Delijanin v. Wolfgang's Steakhouse, Inc.</u>, No. 18-CV-7854 (RA) (KHP), 2019 U.S. Dist. LEXIS 67948 at * 11 - 12 (S.D.N.Y. Apr. 22, 2019).    Thus, the certification process is far from mandatory.  It is a tool that the Court may use and is reserved for use only in "appropriate cases." The Second Circuit, in <u>Myers v. Hertz Corp.</u>, 624 F.3d 537 (2d Cir. 2010), emphasized that when exercising their discretionary authority the Courts must require plaintiffs to make a credible showing that a violation of the law has occurred and that there are other similarly situated employees.  The Court admonished that,

> The "modest factual showing" cannot be satisfied simply by "unsupported assertions," <u>Dybach v. State of Fla. Dep't of Corrections,</u> 942 F.2d 1562, 1567 (11th Cir. 1991), but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs do in fact exist, see <u>Sbarro</u>, 982 F. Supp. at 261.

A plaintiff must provide evidentiary facts establishing a common policy or plan rather than "conclusory allegations," and courts will deny applications for certification where sufficient evidence is not set forth. <u>Morales v. Plantworks, Inc.</u>, 2006 U.S. Dist. LEXIS 4267 at * 6 – 7 (S.D.N.Y. Feb. 1, 2006).   While Agilant does not dispute that the standard for collective certification pursuant to the FLSA is not onerous, it is also "not automatic." See, <u>Romero v. H.B. Auto. Grp., Inc.</u>, 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012)  quoting <u>Raniere v. Citigroup, Inc.</u>,  827 F. Supp.2d 294 at 320 (S.D.N.Y. 2011).  Courts have rejected motions for conditional certification where the evidence presented by the plaintiffs is based upon hearsay

statements which fail to set forth factual proof that other similarly situated employees were treated in a similar manner.  See Morales, supra, 2006 U.S. Dist. Lexis 4267 at * 6-7 (denying conditional certification motion where plaintiff nurse's allegations concerning pay practices of other nurses were not based upon personal knowledge, but rather hearsay); Flores v. Osaka Health Spa, Inc., 2006 U.S. Dist. Lexis 11378 * 7-8 (S.D.NY. 2006) (denying conditional certification motion where plaintiff alleged in affidavit that she worked a twelve-hour shift without overtime, she had her tips confiscated by management, and she understood that other massage therapists were subjected to the same treatment and policies because plaintiff offered nothing of evidentiary value to support a finding that a factual nexus existed between the way plaintiff and the other employees were compensated); Barfield v. N.Y. City Health and Hospitals Corp., 2005 U.S. Dist. Lexis 28884 * 3 (S.D.N.Y. 2005) (denying conditional certification where plaintiff's allegations concerning other employees were not based on any facts, but rather were based on hearsay statements); Levinson v. Primedia Inc., 2003 U.S. Dist. Lexis 20010 (S.D.N.Y. Nov. 6, 2003) (denying class certification where the plaintiffs merely demonstrated that they were not paid minimum wage or overtime, but there was no factual evidence other than mere conjecture contained in the plaintiffs' affidavits that other employees were subject to the same pay polices); Smith v. Sovereign Bank Corp., Inc., 2003 U.S. Dist. Lexis 21010 (E.D. Pa. 2003) (denying conditional certification where plaintiff alleged without any supporting proof that other workers, like plaintiff, were not paid for time worked on Saturdays and hours worked above 40 hours a week); Briggs v. U.S., 54 Fed. Cl. 205 (Fed. Cl. 2002) (denying conditional certification where plaintiff alleged workers in five other states were not paid overtime and provided an affidavit from plaintiff's counsel setting forth that he had spoken to other workers in such locations who affirmed to him they did not receive overtime, on the basis that such affidavit

failed to contain the names, dates, places and type of unlawful pay practices such persons allegedly were subjected to).

In order to accept the factual showing of the Plaintiffs, the Court will be required to ignore the time records maintained by Agilant as per its statutory obligations.  The Court will be required to ignore the business records maintained by Agilant establishing the hours of work actually reported by each of the Plaintiffs.  The Court will be required to accept as true the hearsay presentation of uncross-examined witnesses, without the benefit of discovery.  The Court will be required to accept the claims that the employees worked a full eight hour day, prior to the so-called off the clock work that is the subject of Plaintiffs' claims.  Most importantly the Court will be required to ignore the Department of Labor approved policies concerning flexible work time, a benefit enjoyed by over one quarter of working people.

In Auffray v. FXFL, LLC, S.D.N.Y. Docket No. 15-cv-9379-GHW, 2016 U.S. Dist. LEXIS 159475 at * 5-6 (S.D.N.Y. Nov. 16, 2016), Your Honor summarized the discretionary application of the rules for preliminary collective certification.  Your Honor Opined:

> Importantly, and as noted above, the decision whether to grant a motion for conditional certification of an FLSA collective action lies within the discretion of the district court. In Hoffman-La Roche, the Supreme Court discussed whether a district court adjudicating a lawsuit under the Age Discrimination in Employment Act ("ADEA") could authorize and facilitate notice of the pending action. In that case, the Court noted that the ADEA "incorporates enforcement provisions of the Fair Labor Standards Act," including the FLSA's provision concerning collective actions. 493 U.S. at 167-68. The Court went on to hold that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." Id. at 169; see also Myers, 624 F.3d at 554 ("Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and their opportunity to opt-in as represented plaintiffs.") (quoting Hoffman-La Roche Inc., 493 U.S. at 169) (alteration in original). **Plainly, conditional certification of a collective action is not mandatory, even where named plaintiffs are able to show that they are similarly situated to potential opt-in plaintiffs.** (Emphasis added.)

7

The lower courts' discretionary authority is virtually unchecked, as any decision on this question is interlocutory and not automatically appealable. (Myers, 634 F. 3d at555-556).  As such, if the Court determines that a collective action may preliminary proceed, the result will be the release of the company's confidential roster of its Field Technicians, and the ability for counsel for Plaintiffs to solicit retention agreements of these individuals for not just the FLSA alleged violations, but also for the four state causes of action, three of which having no connection whatsoever to the FLSA off the clock allegations. Collective treatment will be virtually impossible, given that those who opt in to this lawsuit, will have to have their cases combined with some plaintiffs who have one or more other claims of entitlement from Agilant, having nothing to do with the FLSA.  Of note, the current opt-in plaintiffs, Earl and McGann, have executed opt-in agreements (See Docket Sheet Entries: 34 and 43), where they have consented to opting in to the Federal aspects of the case.  As to the State causes of action they purport to opt into same, but there is no equivalent State statute allowing for opt-in status to State claims. Thus, as far as can be determined there is no commonality that the current opted in plaintiffs have with the State claims of the original plaintiffs.

**POINT II – The evidence in support is insufficient to allege, much less support, a claim for overtime.**

In order to qualify for consideration, the Plaintiffs must submit evidence of a sufficient basis to establish a prima facie violation of the FLSA. The recitation of the elements of a cause of action, supported by mere conclusory statements, do not suffice to set forth a valid cause of action.  (See, e.g., Your Honor's decision in Jianjun Chen v. 2425 Broadway Chao Rest., LLC, No. 1:16-cv-5735-GHW, 2017 U.S. Dist. LEXIS 92149 (S.D.N.Y. June 15, 2017), citing to Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A plaintiff

must produce evidence in an admissible form that would move the allegations from merely speculative to an actual violation. (See Point I for cases on the insufficiency of hearsay)

At hand the supporting affidavits all parrot an identical mantra of working off the clock on a daily basis.  Yet, Plaintiffs have not cited to a single specific incident, where any of the plaintiffs has testified that on such and such a day, during such and such hours, Plaintiff performed the following specific tasks, which tasks were performed after putting in a full eight hours of work, resulting in actual work exceeding 40 hours in the specific week.  The reason such has not been set forth is because the conclusory statements cannot be supported by specific admissible facts.  For example, Plaintiffs rely on Exhibit 8 of their moving papers for the proposition that on a daily basis they receive their assignments for the following day after business hours and that it takes three quarter of an hour to plan the next day's travel plans. (See, e.g. Pena Affidavit in support.) A review of the specific e-mails, demonstrates the falsity to the claim.  Three of the e-mails specifically state that the employee is to report to the office the following morning.  As to the other emails, there is virtually no planning, as each employee is repeatedly assigned to the same schools so that at worst, the employee would have to decide which train to take or which route to travel the following morning.  A matter of seconds, not even minutes, is entailed in reading the email and deciding which location to report to first. The de minimis doctrine would apply in this scenario. Such, "provides a limiting principle to compensation for trivial calculable quantities of work," De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 373 (3d Cir. 2007), and permits employers to disregard compensable work "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours," Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692, 66 S. Ct. 1187 (1946) . "It is only when an employee is required to give up a substantial measure of his time and effort that

compensable working time is involved." Id.   Logging on to a computer to read an email is not compensable as it is diminimis.  <u>Corbin v. Time Warner Entertainment</u>, 821 F. 3d 1069, 1080 9th Cir. 2015).  Thus, the review of the email, is inconsequential and not the subject of overtime claims.   Each daily email will have to be addressed to determine the amount of overtime entailed in actual "work", which work resulted in working in excess of forty hours in that particular week. Moreover, as will be demonstrated below, this work, would still fall within an eight hour pay day, and thus not result in any overtime.   Ironically, most of the e-mails in Exhibit 8 refer to Plaintiff, Cepeda, the individual who was fired specifically for falsifying his time records. (See Affidavit of Mohammad Ilyas.)  Cepeda has not submitted an affidavit identifying these specific e-mails.  Thus, a question exists as to whether the Court may even consider these submissions as evidence and Agilant objects to any reliance thereon.   Nonetheless, the documents attributed to Cepeda, show that he had an actual starting time on March 3, 2016 of 9:30 and not 8:00. (See page 8 of 24 of Exhibit 8.)  Hence, he cannot claim that his workday on that day began at 8:00. For each day, each Plaintiff and each potential Plaintiff will have different versions of what transpired.

What is most intriguing in all the submissions is the fact that NOT ONE of the attachments was included in the attachments constituting Exhibit 8.   If Plaintiffs' allegations are believed to be true, then Plaintiffs possess hundreds of these daily communications.  In response, Agilant has submitted the attachments it could locate. (See Affidavit of Joseph Roman, Exhibit "C".) Not one of the attachments relates to any substantive need to perform any work off the clock.   Plaintiffs are asking the Court to speculate as to what work was needed to be performed off the clock, as Plaintiffs refuse to provide any semblance of supportive facts.   As can be seen from Agilant's submission, the attachments did not require an iota of effort.   The information

included only the identification of the assignment, the address and a partial sentence description of the problem to be diagnosed. The only additional facts that Exhibits 7 and 8 purport to establish are that on a few isolated occurrences, there were communications from Plaintiffs to Agilant and there were isolated communications among co-workers.  No proof was offered that these emailresulted in the individual Plaintiff having worked in excess of forty hours in the week of the sending of the email. As to the communications between employees, each individual inquiry must be analyzed as to whether the communication was to the benefit of the employee or for the benefit of the employer.  See, Manners v. State, 727 N.Y.S.2d 547, 548 (App. Div. 3d Dep't 2001) (dismissing off-the-clock claim where the employee performed no "work" for the employer's benefit).  No pattern can be inferred from these isolated communications.

In their motion for conditional certification, Plaintiffs have not identified a single potential plaintiff who works or worked in the other three boroughs comprising New York City outside of Queens and Manhattan. The contention that other potential plaintiffs exist who work under different supervision, at different locations and under different conditions of employment, would be arbitrary.  Even if the Court were inclined to find that similarly situated employees exist in Queens or Manhattan, Plaintiffs have not offered any facts to support a similar conclusion in other boroughs.  It has not been established, even on a hearsay basis, that the other boroughs share common policies regarding the so-called off the clock work, and the extent thereof.  Plaintiffs have not submitted a single affidavit from even one technician employed outside Queens and Manhattan Counties.  Plaintiffs are asking the Court to rule on speculation; not upon facts.

Contrast the conclusory assertions of Plaintiffs with the detailed time records, payroll records and statistical analysis provided by Agilant.   Once the Plaintiffs leave the last

assignment, they are free to do as they please.  Field Technicians are expected to report to the first school assignment at the beginning of the school day and remain at assignments until no later than 3:00 the end of the school day.  They are also required to take a one hour meal break during this period.  This constitutes no more than six hours of work.  Since the work day averages less than six hours, even if the Plaintiffs were required to perform one to two additional hours of work each day, as alleged in the Second Amended Complaint, the total of weekly "work hours" would still be significantly lower than forty per week.

Agilant posits that for case management purposes and to avoid fishing expeditions, courts require a preliminary factual showing that an FLSA violation has occurred and that there are actually exists a similarly situated group of potential party plaintiffs.  At hand, Plaintiffs have not even set forth a prima facie claim of a violation of the FLSA.  Plaintiffs concede that the work day begins upon arrival at the first assignment and ends at the departure from the last assignment.   The arrival times and departure times vary every day and virtually never constitute a full eight hour period.  A modest factual showing of an actual violation of the FLSA cannot be satisfied by unsupported assertions or conclusory allegations. Jacob v. Duane Reade, Inc., No. 11-CV-0160(JPO), 2012 U.S. Dist. LEXIS 11053, 2012 WL 260230, at *4 (S.D.N.Y. Jan. 27, 2012).

**Point III – Flex Time Is Approved by the United States Department of Labor**

A review of the DOL Wage and Hour website, establishes an affirmative recognition by the Federal agency entrusted with enforcing the wage and hour laws that in this day and age it is a common practice for employers to provide to employees the desired option of working flexible hours.  At hand, the employees are expected to work a block of hours starting primarily at 8:00 am, but at times at 8:30 am, and work through the typical school day, ending before 3:00 pm.

The employees are expected to take their required one hour meal break during this period of time. A review of the evidence submitted establishes that each employee averages significantly less than eight hours of work each day at the various schools where they report.  For the benefit of the employees, the remainder of any work that need be done that day is permitted to be done at the employees' desired time and location.  Agilant posits that the amount of work conceivably required to perform after leaving the schools is "de minimis".  The email sent after hours is merely a repetition of the information emailed during the work shift.  The Plaintiffs contend that it between one and two hours per day.  Regardless, cumulatively, the total hours of work is less than eight hours per day.

The Second Circuit defines the time that may be charged as work, as:

> Although the FLSA itself does not define "work," the Supreme Court has attempted to do so. In <u>Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123</u>, 321 U.S. 590, 598, 88 L. Ed. 949, 64 S. Ct. 698 (1944), the Court held that "work" under the FLSA means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."

<u>Reich v. S. New Eng. Telecomms. Corp.</u>, 121 F.3d 58, 64 (2d Cir. 1997).   The relevant regulations exclude from the definition, most, if not all the claims for the alleged off the clock work.  The Portal-to-Portal Act (29 U.S.C. 254) provide:

> (a)  Activities not compensable. Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act … on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee ….
> (2)  activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities…

Plaintiffs have conveniently not addressed the issue of whether any, if not all, of the so called off the clock work falls into the category of postliminary or preliminary conduct which does not

constitute a principle activity.   Looking up directions how to get to work is not integral and

indispensable to employees' principal activities of troubleshooting and repairing computer

systems.   As a matter of law, the claims do not rise to a violation of the FLSA and are therefore

not compensable. This is notwithstanding that Plaintiff Pena takes an average of 45 minutes daily

to figure out how to get to his assignments.

**POINT IV – Plaintiffs cannot meet the test for preliminary collective certification.**

In analyzing whether preliminary collective certification is to be directed in the context of

a flex-time scenario, Judge Castle summarized the law as:

> In determining whether to exercise its discretion to send notice to potential class members,
> courts in this Circuit conduct a two-phase inquiry. Id. at 554-55 (reviewing the two-phase
> inquiry and deeming it "sensible" for evaluating certification under section 216(b)); see
> also Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007). At
> the first phase, the court makes a preliminary determination as to whether potential opt-in
> plaintiffs are "similarly situated" to the named plaintiffs. See Myers, 624 F.3d at 555;
> Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971 at *3. Plaintiffs' burden at
> this initial stage is "minimal," id., requiring only a '"modest factual showing' that they and
> potential opt-in plaintiffs 'together were victims of a common policy or plan that violated
> the law.'" Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249,
> 261 (S.D.N.Y. 1997) (Sotomayor, J.)). No showing of numerosity, typicality, commonality
> and representativeness is required. See Lynch, 491 F. Supp. 2d at 369; Iglesias-Mendoza v.
> La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The 'similarly situated'
> standard . . . is thus considerably more liberal than class certification under Rule 23.")
> (Quotation marks omitted).

Fernandez v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 124692 at * 47-48 (S.D.N.Y. Aug.

27, 2013).   The first inquiry addresses whether there are any similarly situated employees.

Neither the FLSA nor the regulations thereunder define the term "similarly situated".   Most

frequently the initial application for preliminary certification involves a single individual making

claims on behalf of others.   Courts need the input of additional employees to compare the

treatment and determine if they fall within the definition of similarly situated.   In Plaintiffs'

application, the Court is presented with four employee affidavits, each explaining the facts as

related to the particular affiant. Plaintiffs do not explain why the remaining two plaintiffs did not

file affidavits. Cepeda did not, ostensibly because, by lying on his time records, he has taken

himself out of any potential collective class. It is essentially conceded that Cepeda cannot be

part of any class. While each of Plaintiffs' affidavits claim to work off the clock, the

circumstances, times and dates are not shared. Hence, there is sufficient evidence to find that

they are not similarly situated to support denial of the motion, notwithstanding the low hurdle of

evidence required for initial certification.

The Courts in this District require a finding of more than just a group of employees who

are subject to a common policy that violates the law. As Judge Sotomayor summarized in

Hoffmann v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997), the threshold issue requires a

twofold finding: one being, that there is a violation of the law, and second, that there are

potential similarly situated plaintiffs that were victims of this unlawful practice. Plaintiffs

believe that they may skip the first prong and need only demonstrate that others fall into the

same policy. Plaintiffs improperly interchange the concept of a "common policy", with the

statutory mandate off "commonly situated".

It is well settled, that off the clock allegations with claims of altering time records to

eliminate records of overtime, are "too individualized to warrant collective treatment." Lawrence

v. City of Philadelphia, 2004 U.S. Dist. Lexis 8445 (E.D. Pa. 2004); Diaz v. Electronics

Boutique of America Inc., Western District of New York, Docket No. 04-CV-840E, 2005 U.S.

Dist. Lexis 30382at * 16 (October 17, 2005). As the Court cautioned in Diaz, citing to

Lawrence:

> "The 'off-the-clock' claim does not involve regularly scheduled time that is worked by all
> members of the class. Rather, each of the Plaintiffs may potentially claim that on any given
> day he or she arrived early or departed outside of their regularly scheduled hours and were
> not compensated for such. The circumstances of those individual claims potentially vary

too widely to conclude that in regard to their 'off-the-clock' claim, the Plaintiffs are similarly situated."

See also, <u>Basco v. Wal-Mart Stores, Inc.</u>, No. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 1, 2004) (denying notice where the "individualized" nature of plaintiffs' off-the-clock and other claims were "neither homogeneous nor len[t] themselves to collective inquiry").

At hand, each and every Plaintiff, much less, each and every potential opt in plaintiff, would have different claims as to each day of work and how much time was claimed to be off the clock on that particular day. Questions of fact would be different, as each day, each prospective plaintiff, will have worked at a different location, and will have arrived at the first assignment and have left the last assignment of each day at different times. The case at hand, as the <u>Diaz</u> case, would require an examination by the Court as to the exact times of daily arrivals; the exact times of daily departures; whether on any particular day the meal break was taken; and the exact times of purported off the clock work. Moreover, given that Agilant has records of actually paying overtime, would further necessitate individual assessments, rather than collective treatment. (See, <u>White v. Osmose, Inc.</u>, 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) ("Because [the employer] did in fact pay *some* overtime, it is likely that any particular claim [i.e., that the plaintiff was required to work off the clock] will require specific, individualized proof as to any hours that [the employer] refused to pay.") Such a scenario would be unduly burdensome upon the Court. As the <u>Diaz</u> Court admonished: "the allegations are not sufficiently specific beyond each named plaintiffs' respective circumstances." Of import is the fact that Plaintiffs have not and cannot identify a model that could measure damages on a collective basis for the alleged off the clock claims. Normally the inability to identify a damage model is the subject of a motion to declassify. However, in the context of off the clock claims, there is a consensus that such models cannot be identified, given the infinite differences among each member of the purported class.

Moreover, each of the Plaintiffs contend that a great portion of their off the clock time is spent on self-educating themselves in how to deal with employment related issues.   Independent research by the employee outside of the work day is not work-time even if it is directly related to the job. (29 C.F.R. 785.31) Independent inquiry is necessary to calculate each technician's utilization of the time and the application of the regulatory exemption of efforts meant to benefit the employee.

The four affidavits submitted confirm that none of the Plaintiffs or opt in Plaintiffs are "similarly situated".   Each identifies different scenarios where off the clock work is alleged. Only Pena has estimated the actual number of daily overtime hours as "On average the actual work took about 45 minutes to an hour and a half every night" (See paragraph 27 of the Pena affidavit).   Pena adds, however, that the calculation "does not include all the time I would spend waiting for other Techs to respond" to Pena's after hour communications.   Pena contends that he unilaterally determines when to communicate with other technicians (not management) and that he has to be paid for the time waiting for a technician to respond to his off hour communications. Thus, Pena is looking to the Court to order that he be paid for waiting time.   Each of the Plaintiffs describes scenarios particular to each Plaintiffs' individual claims.  Each Plaintiff has a different story to tell.  Each is claiming overtime for different tasks alleged as being performed throughout the night, to the wee hours of the morning. (See, e,g., Plaintiffs' Exhibit 8 - the times of the sending of the emails attributed to Cepeda: 4:23 am (exhibit page 15 0f 24); 12:50 am (exhibit page 16 of 24); 12:43 am (exhibit page 17 of 24); 4:07 am (exhibit page 18 of 24).) Each Plaintiff also fails to account for the fact that their actual time at the jobsites is always well under eight hours.   Each will be unable to rebut the actual time records they each reported as arriving and leaving.   Thus, when the Plaintiffs argue of overtime, they are proceeding under the

false premise that work away from the jobsites automatically starts accruing as overtime after eight hours regardless of the uncontradictable fact that they had not worked eight hours.

Telling in this analysis is the fact that Plaintiffs have intentionally failed to submit an affidavit by plaintiff Cepeda to support their collective applications for preliminary certification. Such an affidavit could not be submitted simply due to the fact that Cepeda falsified his time records.  On the date that Cepeda was caught, Cepeda falsely reported as having arrived almost one full hour before his actual arrival. (See, Ilyas Affirmation) We know Cepeda lied at least once.   Absent further discovery, we do not have the ability to ascertain how frequently he falsified his time records.  Is Cepeda the exception or is he the rule?  Have the other named Plaintiffs similarly falsified their arrival and/or their departure times?    Even assuming the answer to be no, the Plaintiffs can only assert what they believe to apply to each of themselves. They cannot purport to know how or the extent to which such might apply to others.    While Plaintiffs assert that the off the clock work is based upon a common policy, the specific applications of that policy are only known to each individual employee.  Each of the fact patterns presented by Plaintiffs at hand is strikingly different from each case of off the clock preliminary certification cited by each of the other Plaintiffs.   At hand the Plaintiffs cannot and do not challenge that their paid work day begins when they report to their first assignment and that once they report out at the final daily assignment, the actual work ends.   This work day does not come close to forty hours of work for any employee in any week.  There is a concession that Plaintiffs are not similarly situated.

Agilant posits that the off the clock facts as set forth by Plaintiffs distinguish this case from other cases, which await the final certification process to determine similarly situated status.  At hand Plaintiffs have presented to the Court the affidavits of four individuals, who

confirm that each of their off the clock claims must be addressed separately. Each of the four affiants identifies, albeit in conclusory terms, different scenarios where and when the alleged off the clock work was performed. Each has different clock in and clock out times for the dates they claim to have also worked off the clock. For the six Plaintiffs alone there are no less than 721 different late clock in times and 2,388 early clock out times. The damages of each of the affiants is basically conceded as necessitating separate calculations, as it is admitted that there is no pattern. Plaintiffs have provided no records of any patterns. It is a forgone conclusion, based upon the presented facts, that similarly situated status cannot be established. Since the outcome is to deny collective certification based upon this factor alone, a fortiori, preliminary certification would be an abuse of the Court's discretion.

Plaintiffs contend that they regularly work through their required one hour meal break. This factor, in and of itself, deprives Plaintiffs of commonality. Thus, in calculating the overtime work, the Court will be required to inquire as to whether it is all Field Technicians, whether it is only some technicians, whether those who purport to work through the meal period do it every day or only some days, and whether working through lunch is done so as to finish the work and leave early. The variables for each potential plaintiff in calculation of purported overtime would be infinite. In this context Judge Chen, of the Eastern District of New York summarized:

> …"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citations omitted). "The relevant knowledge is not 'I know the employee was working,' but 'I know the employee was working and not reporting his time.'" White, 699 F.3d at 875 (emphasis in original; citation omitted). "When, as here, the moving party has the burden of proof at trial, that party must affirmatively show the absence of a genuine issue of material fact; in short, that no reasonable jury could find for the non-moving part." Hinterberger v. Catholic Health Sys., 299 F.R.D. 22, 37 (W.D.N.Y. 2014).

Briceno v. USI Servs. Grp., Inc., No. 09-CV-4252(PKC), 2015 U.S. Dist. LEXIS 132185 at * 23

– 24 (E.D.N.Y. Sep. 29, 2015).  As Judge Chen further concluded, given the myriad of variables

as to each of the proposed collective class members in calculating working through a meal break:

> When the employer's defenses are highly individualized as to each Plaintiff, "this factor
> weighs heavily against proceeding . . . as [a FLSA] collective action." Zivali, 784 F. Supp.
> 2d at 467-68

 Judge Rakoff's decision in Zivali (Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456

(S.D.N.Y. 2011)), as cited by Judge Chen, is instructive.   Once allegations of not taking

mandatory meal time becomes an issue, a collective action is, by definition unmanageable, given

the infinite variables.   Judge Rakoff found:

> [A] collective action would be unmanageable as to claims involving meal times and breaks
> because the claims varied enormously among the employees and by location); Proctor v.
> Allsups Convenience Stores, Inc., 250 F.R.D. 278, 284 (N.D. Tex. 2008) ("Although the
> 2nd Circuit has affirmed representative testimony of only 2.7% of a class, that case
> involved 'actual consistency' among the testimony 'both within each category [of
> employee] and overall'; there was 'no contradictory testimony'; the abuse arose from a
> policy that was consistently applied; and the uncompensated 'periods at issue were the
> employees' lunch hours, which are predictable, daily-recurring periods of uniform and
> predetermined duration.'") (quoting Reich v. S. New England Commc'ns Corp., 121 F.3d
> 58, 68 (2nd  Cir. 1997)). Bifurcation of the trial would not resolve the issue as there is no
> consistent evidence as to either liability or damages. See, e.g., Aldous v. Honda Motor Co.,
> Ltd., No. 94-CV-1090, 1996 U.S. Dist. LEXIS 7855, 1996 WL 312189, at *1 (N.D.N.Y.
> May 30, 1996) ("[B]ifurcation is inappropriate where the 'same witnesses may be needed
> to testify as to both the issues of liability and damages, and . . . evidence pertaining to these
> issues may very well overlap.'") (citation omitted). Resolution of the many fact-specific
> issues in this case would essentially require 4,100 mini-trials in which each individual
> plaintiff could present evidence that he or she in fact failed to receive proper overtime
> compensation — evidence that would then be subject to cross-examination and similar
> challenge by the defendant. "Such a result is the antithesis of collective action treatment
> and would overwhelm the judicial system and eliminate any judicial efficiency that might
> be gained through a collective approach." Hinojos v. Home Depot, Inc., No. 2:06-CV-
> 00108, 2006 U.S. Dist. LEXIS 95434, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006).

Plaintiffs are asking the Court to preliminarily certify a class that in the end, as a matter of law,

would not be subject to final certification.   At hand, the clocked in and out times are always

significantly under forty hours per week.  The clocked in and out times vary each and every day

for each Plaintiff.   The amounts of "work" performed after hours could not fit into any rational formula. Whether lunch breaks were taken, in full, or in part, and on a regular or infrequent basis is not subject to a similarly situated disposition.   While the Court could try individual cases of off the clock work, based upon best recollection and summaries of individuals, the Court could not accept those variables and testimony as relevant or applicable to any other employee. The potential opt in class of plaintiffs would as a matter of law not meet the definition of "similarly situated".   Accordingly, preliminary collective certification is simply not warranted.

### POINT V - Equitable tolling of the statute of limitations and the proposed notice are inappropriate.

Agilant vigorously contests Plaintiff's allegations and have asserted that Field Technicians did not work over 40 hours a week, have asserted that the time Field Technicians claimed they were not paid overtime was de minimus and non-compensable, and have asserted that in the event Field Technicians did work over 40 hours in a week, they were paid overtime. Moreover, Agilant has established that based upon Plaintiffs' submissions, that the action does not meet the statutory definition of "similarly situated" so as to even warrant preliminary collective certification. Nonetheless, Agilant wishes to go on record as to its positions, vis a vis, the proposed notice, follow-up notice and tolling issues.

Plaintiffs have petitioned the Court to equitably toll the three year statute of limitations. Such relief, as a general rule is not granted.  As Judge Magistrate Judge Parker recently opined in Delijanin v. Wolfgang's Steakhouse, Inc., No. 18-CV-7854 (RA) (KHP), 2019 U.S. Dist. LEXIS 67948 (S.D.N.Y. Apr. 22, 2019):

> Equitable tolling is appropriate "only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights." Vasto v. Credico (USA) LLC, No. 15-cv-9298 (PAE), 2016 U.S. Dist. LEXIS 60158, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (citations and internal quotation marks omitted).

This is not a "rare and exceptional" case which would remotely allow for tolling. For example, tolling is appropriate where "it would have been impossible for a reasonably prudent person to learn of the cause of action . . . or if the defendant concealed from the plaintiff the existence of the cause of action," Moran v. GTL Const., LLC, No. 06CV0168, 2007 U.S. Dist. LEXIS 55098, 2007 WL 2142343, at *3 (S.D.N.Y. July 24, 2007) (internal citations omitted); where the defendants did not post FLSA-required notices advising employees of the right to earn minimum wage and overtime compensation, Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. Jan. 29, 2007). (Cited from Hosking v. New World Mortg., Inc., 602 F. Supp. 2d 441 (E.D.N.Y. 2009). At hand, there is a total absence of evidence to remotely suggest that Agilant concealed or impeded any employees from timely filing a lawsuit raising statutory wage claims. Rather, Agilant has fully complied with the Federal obligations to post a copy of the Federal Wage and Hour poster, at locations where notices to employees are commonly posted. (See Roman Affirmation, par. 12) Plaintiffs may respond to this by arguing that their fear of termination might have caused them to not seek relief earlier. This simply begs the question. If the employees were threatened, as alleged in the Second Amended Complaint, but not specifically described in any of the affidavits, and which is denied by Agilant, the employees were then on notice to seek out their statutory rights and act upon such purported threats. The test for tolling cannot be the same "low hurdle" test as is invoked for preliminary collective certification. Determinations in this area are always factually intensive. As such, it is simply too early in this litigation to make a determination as to whether tolling is appropriate. See, Lama v. Malik, 58 F. Supp. 3d 226 (E.D.N.Y. 2014), and the cases cited therein.

The opt-in period should run from the date the notice is given, rather than the date Plaintiff filed his Complaint. See, e.g. In re Penthouse Exec. Club Comp. Litig. S.D.N.Y.

Docket No. 10-CV-1145, 2010 U.S. Dist. LEXIS 114743 at footnote 4 (S.D.N.Y. Oct. 26, 2010) ("[I]t is appropriate at this stage for the plaintiffs to provide notice to all dancers who worked at the Penthouse Executive Club within three years of the sending of the notice to conform as closely to 29 U.S.C. § 256 as possible."); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003) (providing that notice should be addressed to those employed at defendant's place of business within three years preceding the order).

Plaintiffs further posit that a three month opt in period is required.  Such is excessive.  Courts in the Second Circuit have held that a sixty-day opt-in period is "common practice."  See e.g., Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 61 (E.D.N.Y. 2011); Bowens v. Atl. Main Corp., 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008).

Plaintiffs pose that the official notice to the potential opt in class identify the Plaintiffs' counsel as a source for information.  (See Plaintiff Exhibit 10, the Proposed Notice)  There is no legal requirement that an employer-defendant be compelled to identify a particular lawyer or firm to employees seeking to be informed of their legal rights under the FLSA.  Defendants oppose identifying any lawyers in any notices.  All Agilant employees are capable of reading the posted U.S. Department of Labor postings which give more than sufficient information as to rights under the FLSA.  Nor is it required to identify Plaintiffs' attorney as a mailing address. (Exhibit 10, paragraph 8.)   If a notice is to be returned by mail, such should be sent to the Court. (e.g. Sharma v. Burberry Ltd., 52 F. Supp. 3d 443 (E.D.N.Y. 2014)) .  Offering the option to contact Agilant's counsel, would put Agilant's counsel in a conflicted position of having to advise potential adverse parties of their legal rights.  Moreover, there is no reason to provide counsel for Plaintiffs' top billing, with only a side alternative to contact Agilant's attorneys as an

afterthought.  There is a typo in the spelling of Agilant counsel's name. Paragraph 11, at top of page 4)

The proposed notice includes a detailed description of the purported retainer agreements negotiated with the current Plaintiffs. (Paragraph 11)  It is questioned as to whether the named Plaintiffs have also been promised bonuses should the matter be converted to a class action.  As there has been no discovery, Agilant is unable to address the accuracy of the statements as to the retainer relationship negotiated by each of the Plaintiffs, with their attorneys.  The notice is a solicitation of business for a particular attorney for a particular fee and is simply improper to require Agilant to be required to cooperate in the solicitation of counsel to sue it.  Counsel for Plaintiffs should be precluded from identifying its contractual relationship with the current Plaintiffs, as such would be a court ordered solicitation of business of the potential opt in class member clients.

Paragraph 12 of the proposed notice is simply factually incorrect and misleading based upon the overall allegations of the Second Amended Complaint.  As Plaintiffs are also seeking Rule 23 class action status, a settlement of the Rule 23 class action portion would involve a settlement of the Federal claim, as both seek the identical relief for overlapping time periods. By stating "If you do not join this lawsuit, you will not be part of this case in any way" is a clear and blatant misstatement of Plaintiffs' ultimate prayers for relief under the Second Amended Complaint.

The "Consent to Join" form (last page of Plaintiffs' Exhibit 10) also is objectionable for the same reasons as stated above.  Agilant should not be asked, nor required, to be part of a document which recommends to its employees to be represented in a case by a particular attorney.  This information will be sent at a time where no discovery has taken place and for the

purpose of taking advantage of the so-called low hurdle that need be met for preliminary collective certification.  Agilant is entitled to at least some due process, as guaranteed by the Fourth Amendment.

Plaintiffs ask that a follow up post card be authorized to be sent to non-opting in class members.  (Plaintiffs Exhibit 11)  Defendants oppose any such supplemental notice as under the law such is not mandated and Plaintiffs have offered no basis for believing that the initial notices will not have been received.

Lastly, Agilant requests that all costs of the mailings be borne by the Plaintiffs and that the notices be sent out by an independent mailing service that will not provide the names and addresses of the potential collective class members to Plaintiffs nor their attorneys.  Employment lists are confidential business records.  Names and addresses of the Field Technicians constitute valuable information to Agilant's competitors.  Once a former employee has this information, it will result in irreparable harm if given to a competitor.  Once opposing counsel has the information, there is virtually no way that solicitations for services can be prevented.

## CONCLUSION

Based upon the above, Agilant respectfully urges the Court to deny, in its entirety Plaintiffs' motion for preliminary collective certification and the request that the statute of limitations be in any way tolled.  Agilant further requests that the Court grant it such other and further relief as appropriate in the circumstances.

Dated:  Fort Lee, New Jersey
          June 3, 2019

Raab, Sturm & Ganchrow, LLP.

By: Ira A. Sturm
Attorneys for Defendants
2125 Center Avenue, Suite 100
Fort Lee, New Jersey 07024

25

201-292-0150
Fax: 201-292-0152
isturm@rsgllp.com