```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/22/2019
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JAVAN OCONNER, individually and on behalf of      :
all others similarly situated, RAMIN PENA,        :
individually and on behalf of all others similarly :
situated, JONATHAN CEPADA, individually and       :      1:18-cv-6937-GHW
on behalf of all others similarly situated, and   :
SHAWN GRIFFITH,                                   :      MEMORANDUM OPINION
                                                  :      AND ORDER
                                  Plaintiffs,:
                                                  :
-v-                                               :
                                                  :
AGILANT SOLUTIONS, INC., doing business as        :
ASI System Integration, Inc.,                     :
                                                  :
                                  Defendant.:
-----------------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

Named Plaintiffs Javan O'Conner, Ramin Pena, Jonathan Cepada, and Shawn Griffith together with opt-in Plaintiffs Rashood Earle and Khazaizal Tamin McGann (collectively, the "Plaintiffs") were employed as Field Technicians ("FTs") either directly or indirectly by Defendant Agilant Solutions, Inc ("ASI"). In affidavits, Plaintiffs aver that Defendant had a policy of sending emails to FTs after their workday had ended that required them to work to prepare for the following day. Because these emails required Plaintiffs to work overtime for which they were not compensated, Plaintiffs allege that this policy violated § 216(b) of the Fair Labor Standards Act ("FLSA"). Plaintiffs have made a modest factual showing that they are similarly situated to other FTs and that together, Plaintiffs and other FTs were subjected to a common policy or plan that violated the FLSA. Accordingly, Plaintiffs' motion to conditionally certify a collective of FTs who were directly or indirectly employed by ASI is GRANTED. Plaintiffs' request for equitable tolling of the statute of limitations applicable to Plaintiffs' FLSA claims is also GRANTED.

## I. BACKGROUND

### A. Facts[1]

FTs employed by ASI are responsible for "troubleshooting and fixing broken computers and printers for ASI clients" in New York City. Affidavit of Plaintiff Javan O'Connor ("O'Conner Aff."), Dkt No. 47-1, ¶¶ 9-10. To perform this work, FTs travel to client sites to fix broken machines. *Id.* ¶ 9. FTs are scheduled to work from 8 or 8:30 a.m. to 5 or 5:30 p.m. with a mandatory one-hour lunch break in the middle of the day. *See, e.g.*, *id.* ¶ 25. Thus, FTs are scheduled to work for 40 hours per week.

FTs do not punch in or out at the start or end of their workday. *See, e.g.*, *id.* ¶ 33. Rather, FTs are required to input eight hours per workday into Defendants' payroll system. *See, e.g.*, *id.* ¶ 34; Affidavit of Ramin Pena ("Pena Aff."), Dkt No. 47-2, ¶ 41 ("Based on my personal observations and conversation with co-workers, including but not limited to Javan O'Connor, Shawn Griffith, Rashood Earle, John Rivera, Jose Sanchez, and Chi Wong, everyone who worked for Defendant as a Tech was similarly instructed to" input eight hours into ASI's payroll system.). ASI had a company-wide policy that only allowed overtime for pre-approved projects and did not cover incidental overtime. *See, e.g.*, O'Conner Aff. ¶¶ 37-38, 42.

FTs receive their job assignments through "tickets" that instruct them what site they should attend and the nature of the work to be performed. *See, e.g.*, *id.* ¶ 12-13. FTs receive their tickets in an email sent after 5 p.m. with instructions related to their work for the following day. *See, e.g.*, *id.* ¶ 12; Pena Aff. ¶ 16. After they receive this email, FTs are required to prepare their routes for the next day's work, known as their "Tech Routes." *See, e.g.*, O'Conner Aff. ¶ 16; Pena Aff. ¶ 16. "The Tech Route email was always sent out after 5pm because it could not be completed until dispatch

---

[1] Except as otherwise noted, these facts are drawn from the affidavits submitted in support of Plaintiffs' motion for conditional certification by Named Plaintiffs Javan O'Connor, Ramin Pena, and Shawn Griffith and opt-in Plaintiffs Rashood Earle and Khazaizal Tamin McGann.

knew which tickets from that day were completed or pending and needed reassignment for the following day." O'Conner Aff. ¶ 15.

Plaintiffs have spoken with other FTs about how they always receive the Tech Route email after 5 p.m. *See, e.g.*, O'Conner Aff. ¶ 14. "All Techs who worked for Defendant similarly received their actual ticket[] assignments for the following day[']s work through the Tech Route email." Pena Aff. ¶ 19; *see also id.* ¶ 20 ("I directly spoke with Javan O'Conner, Rashood Earle, Shawn Griffith, John Rivera, Jose Sanchez, Chi Wong, and others about receiving the Tech Route email after 5pm and often much later."). Sometimes, FTs were assigned to complete jobs that other FTs had begun the previous day if the job could not be completed in one day. *See, e.g.*, Pena Aff. ¶ 13.

FTs are also often required to perform other work in the evening, including reviewing materials to prepare for their next day's assignments, exchanging parts with other FTs, and completing online certifications required for the job. *See, e.g.*, O'Conner Aff. ¶¶ 17, 21-26; Pena Aff. ¶¶ 17, 21-26. Plaintiffs aver that this off-the-clock work takes anywhere from 45 minutes to 3 hours. *See, e.g.*, O'Conner Aff. ¶ 18; Pena Aff. ¶ 28. In addition, FTs are often required to perform work during their mandatory, unpaid meal breaks. *See, e.g.*, Affidavit of Plaintiff Shawn Griffith ("Griffith Aff."), Dkt No. 47-3, ¶ 38-40. Plaintiffs aver that they spoke with other FTs and that they were subjected to these same policies. *See, e.g.*, O'Conner Aff. ¶ 14; Pena Aff. ¶ 44; Griffith Aff. ¶¶ 33-36; Affidavit of Plaintiff Rashood Earle ("Earle Aff."), Dkt No. 47-4, ¶¶ 15-20; Affidavit of Plaintiff Khazaizal Tamin McGann ("McGann Aff."), Dkt No. 47-5, ¶ 19.

FTs often began their employment as employees of third-party IT staffing companies that were closely related to ASI. All five Plaintiffs who have submitted affidavits were initially hired through one such agency called Technology Staffing Professionals ("TSP"). *See, e.g.*, Pena Aff. ¶ 6. In the Second Amended Complaint, Plaintiffs allege that "[u]pon information and belief, Plaintiffs and all members of the putative Class and Collective Classes were initially hired indirectly by TSP, or

3

another IT staffing company, and the Defendant pursuant to a joint employment arrangement." Second Amended Complaint ("SAC"), Dkt No. 31, ¶ 38.

"Defendant and the third-party IT staffing firm—the joint employers in the indirect employment relationship—both had the ability (i) to hire, fire and discipline Plaintiffs; (ii) establish Plaintiffs' working conditions; (iii) set Plaintiff's' hours; (iv) assign them specific projects, which they could not reject; and (v) impose daily supervision and direction over their work." *Id.* ¶ 39. "Given the interrelated nature of operations between the joint employer companies, including an interrelated HR function," Plaintiffs allege that "the two companies act as a single enterprise and joint employer as those terms are understood under the FLSA, the NYLL, and relevant regulations." *Id.* ¶ 40.

In their affidavits, Plaintiffs have averred that FTs were required to perform the same duties whether they were employed by TSP or ASI. *See, e.g.*, Pena Aff. ¶ 31 ("[T]he Tech Route email and off-the-clock work requirements were always the same" whether FTs were employed directly by ASI or indirectly by TSP.). From Plaintiffs' perspective, the only substantive difference between being employed by ASI and TSP is that they became salaried employees when they worked for ASI. O'Conner Aff. ¶ 7. However, because Plaintiffs were required to record eight hours per day regardless of their actual working hours, *see, e.g., id.* ¶ 34, this did not affect the amount they were paid. Plaintiffs have also averred that there was little functional separation between TSP and ASI. *Id.* ¶ 8 ("Based on my understanding, TSP was a part of ASI and all the managers and staff were interchangeable between TSP and ASI."). Plaintiffs have also alleged that "Plaintiff O'Conner's IRS 1095-C form lists TSP as having the same address as Agilant." SAC ¶ 30.

**B. Procedural History**

Plaintiffs filed a class and collective action complaint alleging breaches of New York Labor Law ("NYLL") and the FLSA on August 3, 2018. Complaint, Dkt No. 2. The original complaint sought certification of an FLSA collective action and a class action pursuant to Federal Rule of Civil Procedure 23 consisting of "[a]ll individuals employed by Defendant as Field Service Technicians, in

4

worksites throughout New York State at any point" from three years prior to the filing of the Complaint through final disposition of the action. Complaint ¶¶ 4, 101, 110. Plaintiffs subsequently filed an amended complaint, Dkt No. 12, and filed the SAC on January 24, 2019.

The SAC seeks conditional certification of two FLSA collectives.[2] First, Plaintiffs seek certification of an "Indirectly Employed Collective Class" under the FLSA consisting of "all persons presently or formerly jointly employed by Defendant Agilant and another IT staffing vendor, assigned to worksites located throughout New York City at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the 'Collective Class Period') who were subject to Defendant's unlawful policy of 'paying to schedule' and failing to pay overtime compensation for all hours worked over 40 in a given workweek." SAC ¶ 4. Second, Plaintiffs seek certification of a "Directly Employed Collective Class" under the FLSA consisting of "all persons presently or formerly employed directly by Agilant after transitioning employment from indirect employment, and were salaried Field Service Technicians assigned to worksites located throughout New York City at any time within" the Collective Class Period and who were allegedly subject to the same unlawful policies as the Indirectly Employed Collective Class. *Id.* ¶ 5.

Plaintiffs now move for conditional collective certification under the FLSA. Dkt No. 46. Plaintiffs seek court-facilitated notice of this action, including a consent form, and this Court's approval of their proposed notice and consent form. Memorandum of Law in Support of Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA, for Expedited Discovery, and for Equitable Tolling ("Mem."), Dkt No. 48, at 8.[3] To that end, Plaintiffs ask the Court to order posting of the notice and consent forms in a conspicuous place at Defendant's places of business and to authorize the dissemination of these forms to members of the putative class via mail, e-mail, and text message. *Id.* at 26-29. To further facilitate the dissemination

---

[2] The SAC also seeks certification of two classes pursuant to Federal Rule of Civil Procedure 23.
[3] Citations to ECF documents refer to the ECF pagination.

5

of this notice, Plaintiffs seek the production of a "computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, social security numbers, birth dates, dates of employment and job titles for all persons employed at ASI as Field Technicians between May 15, 2016 and the present date." *Id.* at 30. Plaintiffs also seek "expedited disclosure of the identity and contact information of all similarly situated persons" and "equitable tolling of the statute of limitations during the pendency of this Motion." *Id.*

Plaintiffs have filed a declaration that attaches five affidavits of former FTs, ASI business records, emails, their proposed notice, and a reminder postcard in support of their motion. Declaration of Christopher Davis in Support of Motion for Conditional Certification, Dkt No. 47. Defendant filed an opposition to Plaintiff's motion, Memorandum of Law in Opposition to Motion To Preliminarily Certify A Coll[ec]tive Action and Request To Toll ("Opp."), Dkt No. 51, accompanied by two affirmations attaching ASI business records in opposition, Affirmation of Mohammad Ilyas in Opposition to Motion for Conditional Certification, Dkt No. 50; Affirmation of Joseph Roman in Opposition to Motion for Conditional Certification, Dkt No. 52. Plaintiffs filed a reply to Defendant's opposition. Reply Memorandum in Further Support of Motion for Conditional Certification, Dkt No. 55.

## II. LEGAL STANDARD

The FLSA provides that an action for unlawful employment practices may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions, FLSA collective actions need not satisfy the requirements of Federal Rule of Civil Procedure 23, and only plaintiffs who "opt in" by filing consents to join the action are bound by the judgment. *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013). District courts have "'discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz*

*Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (quoting *Hoffman–La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989) (alteration in original)).

The Second Circuit has approved a two-step method to certify FLSA collective actions. *Myers,* 624 F.3d at 555. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* Courts may approve sending notice if "plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Although "unsupported assertions" are not sufficient, the factual showing required "should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.*; *see also Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden at this preliminary stage is minimal." (quotation omitted)). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

"This initial burden is limited, in part, because the determination that the parties are similarly situated is merely a preliminary one and may be modified or reversed" at the second stage of the inquiry. *Id.* at 369 (quotation omitted). This second stage occurs after notice is sent, the opt-in period ends, and discovery closes. *Mendoza,* 2013 WL 5211839, at *2. At this point, the district court will have a "fuller record" and can then "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers,* 624 F.3d at 555.

**III. DISCUSSION**

Plaintiffs have met the limited burden applicable at this stage of the litigation to show that they and other New York FTs were subjected to a common policy or plan. Plaintiffs have averred that based on their personal experience and conversations with other New York FTs, other New York FTs performed similar repair and troubleshooting work. *See, e.g.*, Pena Aff. ¶ 12. Plaintiffs have also presented evidence suggesting that other New York FTs received their assignments via the same ticketing system. *See, e.g., id.* ¶ 19. Similarly, Plaintiffs have presented sufficient evidence to support their contention that a substantial number, if not all, other New York FTs received Tech Route emails after 5 p.m and were required to work in the evenings after 5 p.m. to prepare for their work on the following day. *See, e.g.*, O'Conner Aff. ¶¶ 12-14. Other New York FTs were instructed to input eight hours into ASI's payroll software rather than entering their actual hours worked. *See, e.g.*, Pena Aff. ¶ 41. These statements are sufficient to meet Plaintiffs' limited burden to show that FTs were subjected to a common policy or plan.

Plaintiffs have also met their limited burden to show that Defendant's policy or plan violated the law. Plaintiffs have stated that as a result of Defendant's policies, they were forced to work overtime for which they were not adequately compensated. *See, e.g.*, Pena Aff. ¶ 16; O'Conner Aff. ¶ 12. Plaintiffs have also averred that their supervisors were aware that they were required to perform overtime work for which they were not compensated. *See, e.g.*, Pena Aff. ¶ 29. At this stage of the litigation, that is sufficient to establish that Defendant's policy violated the FLSA. Hence, Plaintiffs have shown that they are similarly situated to other FTs, and Plaintiffs and FTs generally were subjected to a common policy or plan that violated the law.

Defendants arguments against collective certification are unpersuasive. These arguments can be grouped into two categories. First, Defendant argues that off-the-clock claims like Plaintiffs' require sufficiently individualized inquiry that their claims are not well suited to collective disposition. Second, Defendant effectively argues that Plaintiffs' claims fail on the merits.

### A. Off-the-Clock Claims

Plaintiffs' claims are amenable to collective disposition. Defendant argues that "the common consensus is that ultimately class and collective final certification is rarely granted in the context of 'off the clock' claims." Opp. at 7. This is because, according to Defendant, such claims are "too individualized to warrant collective treatment." *Id.* at 15 (citing *Lawrence v. City of Phila.*, No. 03-CV-4009, 2004 WL 945139 (E.D. Pa. Apr. 28, 2004); *Diaz v. Electronics Boutique of Am., Inc.*, 04-CV-0840E(SR), 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005)).

Contrary to Defendant's assertion that there is a "common consensus" against certifying off-the-clock claims, however, "courts have conditionally certified classes in large off-the-clock cases despite the individualized issues such cases present." *Barry v. S.E.B. Serv. of New York, Inc.*, 11-CV-5089 SLT JMA, 2013 WL 6150718, at *6 (E.D.N.Y. Nov. 22, 2013) (citing *Amador v. Morgan Stanley & Co. LLC*, 11 CIV. 4326 RJS, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013); *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *9-10 (S.D. Tex. May 28, 2008)). "Although defendants often argue that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable," as Defendant argues in this case, "the majority of courts in this Circuit decline to consider such arguments at the conditional certification stage, and, instead, put these issues off until the decertification stage, when discovery is complete." *Id.* (citing *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012); *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 647-48 (S.D.N.Y. 2010); *Francis v. A & E Stores, Inc.*, No. 06-CV-1638, 2008 WL 4619858, at *3 n.3 (S.D.N.Y. Oct. 16, 2008)). "Any individualized issues that remain [after the collective-wide proceeding] can likely be addressed in subsequent damages proceedings." *Id.*

Here, Plaintiffs have averred that Defendant had a policy that required all FTs to work off the clock. Because Plaintiffs' claims are based on this policy, these claims are amenable to collective disposition. Although individualized issues may remain after adjudication of whether Defendant's policy violated the law, these issues can be addressed during separate phases of the litigation as

9

necessary. Thus, the individualized issues presented by Plaintiffs' claims do not defeat conditional certification in this case.

### B. Merits Arguments

Defendant's other arguments amount to attacks on the merits of Plaintiffs' claims that are premature at this stage of the litigation. Defendant argues that FTs are generally scheduled to work six hours per day and that they are therefore left with approximately "two hours per day of flex-time to accomplish the tasks . . . which they now contend were performed off the clock." Opp. at 8. Defendant also argues that any work performed by Plaintiffs should qualify as "de minimis" and therefore not compensable. *See id.* at 10.

These defenses, which go to the merits of Plaintiffs' claims, do not carry substantial weight at this phase of the litigation. At the collective certification stage, the Court need not "resolve factual disputes [or] decide substantive issues going to the ultimate merits." *Lynch*, 491 F. Supp. 2d at 368. Rather, the Court is merely concerned with whether Plaintiffs were similarly situated to other FTs and whether FTs generally were subjected to a common policy or plan that violated the law. Accordingly, Defendant's arguments are premature and do not defeat collective certification.

### C. Scope of the Collective

Plaintiffs ask the Court to conditionally certify a collective consisting of FTs who were directly employed by Defendant and those who were "indirectly" employed by Defendant via a third-party temporary staffing agency such as TSP. Mem. at 8. To that end, Plaintiffs have presented evidence that FTs who were employed by TSP performed the same work and were subjected to the same policies as employees who worked directly for ASI. *See, e.g.*, O'Conner Aff. ¶¶ 6-8, 23; *see also* Pena Aff. ¶ 31 ("It did not matter whether I was directly or indirectly employed— the Tech Route email and off-the-clock work requirements were always the same."). These factual

statements support a finding that direct and indirect employees were subjected to the same policy or plan that violated the law.[4]

Plaintiffs have also presented evidence that they were employed in four of New York City's boroughs. Pena Aff. ¶ 5 (Manhattan and Queens); O'Connor Aff. ¶ 5 (Manhattan, Brooklyn, and the Bronx); Griffith Aff. ¶ 5 (Queens); Earle Aff. ¶ 6 (Queens, Manhattan, and Brooklyn). Plaintiffs have not presented direct evidence to support a finding that ASI directly or indirectly employed FTs in Staten Island. However, it is a reasonable inference that any such employees were subject to the policies and practices used by ASI in the other boroughs. Thus, the Court conditionally certifies a collective limited to FTs who are or were previously employed directly or indirectly by ASI in New York City.

### D. Equitable Tolling

The circumstances of this case justify equitable tolling of the statute of limitations. Plaintiffs request that the "FLSA statute of limitations be tolled from the date this motion is filed until such time that they are able to send notice to potential opt-in Plaintiffs." Mem. at 31. "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Plaintiffs easily meet the first prong of the equitable tolling analysis. They moved for collective certification within two weeks of the initial pretrial conference in this case.

The time required for the Court to resolve this motion also justifies equitable tolling. Plaintiffs filed this motion on May 15, 2019. Dkt No. 46. Where, as here, "the delay was substantial

---

[4] In the Memorandum in support of their motion, Plaintiffs have requested that the Court certify a certify a single collective consisting of both directly and indirectly employed FTs. Mem. at 8. Because Plaintiffs have met the applicable burden at this stage of the litigation, the Court grants that request. However, the Court expresses no view at this stage as to whether Plaintiffs will be able to meet their ultimate burden to maintain the action as a single collective, as two separate collectives as Plaintiffs allege in the SAC, *see* SAC ¶¶ 4-5, or neither. *Cf. Lynch*, 491 F. Supp. 2d at 369 (noting that "the determination that the parties are similarly situated is merely a preliminary one and may be modified or reversed" at the second step of the FLSA inquiry).

and beyond the control of the parties, and could result in significant prejudice to potential class members," equitable tolling is appropriate. *Hart v. Crab Addison, Inc.*, No. 13-cv-6458, 2015 WL 365785, at *6 (W.D.N.Y. Jan. 27, 2015); *see also Yahraes v. Rest. Associates Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. March 8, 2011) (noting "the unique procedural posture" of FLSA conditional certification decisions in granting equitable tolling of the FLSA statute of limitations). Hence, the Court grants Plaintiffs' request to equitably toll the FLSA statute of limitations from the time that they filed their collective certification motion on May 15, 2019 through the date of this Order.

## IV. CONCLUSION

Accordingly, the Court GRANTS Plaintiff's request to conditionally certify a collective action consisting of FTs who are currently employed by ASI or were previously employed for three years prior to May 15, 2019 until the date of this Order, either directly or indirectly, in New York City. The Court will hold a teleconference regarding Plaintiffs' proposed notice, method of dissemination, and consent forms and Plaintiffs' request for expedited discovery on November 25, 2019 at 3 p.m. The parties are directed to call Chambers (212-805-0296) at that time with all parties on the line. The Court will also address the parties' proposed briefing schedule on Plaintiffs' motion to invalidate arbitration agreements in contracts between FTs and Defendant and to substitute an updated and corrected FLSA Notice and Plaintiffs' request for an extension of the fact discovery deadline on that call. Dkt No. 69.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 46.

SO ORDERED.

Dated: November 22, 2019  
New York, New York  

                                        GREGORY H. WOODS  
                                       United States District Judge