UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
Javan O'Conner, Ramin Pena,
Jonathan Cepeda, Shawn Griffith
Individually and on behalf of all others similarly
Situated,

Plaintiffs,

v.                                          18-CV-6937 (GHW)

Agilant Solutions, Inc. d/b/a ASI
System Integrations, Inc.,

Defendant.
-------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER

Raab, Sturm & Ganchrow, LLP

Attorneys for Defendants

2125 Center Avenue, Suite 100

Fort Lee, New Jersey 07024

201-292-0150

On the Brief: Ira A. Sturm

# **TABLE OF CONTENTS**

Page #'s

Table of Authorities……………………………………………………………II

Preliminary Statement…………………………………………………...…....1

Procedural History……………………………………………………….......3

ARGUMENT…………………………………………………………..........5

**Point I-**      Plaintiffs have waived their rights to seek a protective order……………………5

**Point II-**     Plaintiffs lack standing to seek injunctive relief under the FLSA……………..8

**Point III-**    Recent case law precludes the Courts from granting the relief requested………11

**Point IV-**    The Court should not rely on Rule 23 precedent in determining matters
         solely involving the FLSA…………………………………………………….20

**Point V-**     Agilant's conduct is Constitutionally protected and the ramifications of
         Granting the relief will cause Agilant irreparable harm…………………………21

**CONCLUSION**………………………………………………………………25

# TABLE OF AUTHORITIES

Page #'s

52nd Street Hotel Associates, 321 NLRB 624, 624 (1996) — 13

A. Terzi Prods. v Theat. Protective Union, Local No. One, 2 F. Supp. 2d 485 [SDNY 1998] — 16

Abbott v. City of Virginia Beach, 879 F.2d 132, 135 (4th Cir. 1989), cert. denied, 493 U.S. 1051, 107 L. Ed. 2d 848, 110 S. Ct. 854 (1990) — 19

AGCS Mar. Ins. Co. v. World Fuel Servs., 187 F. Supp. 3d 428, 446 [SDNY 2016] — 6

Air Transp. Ass'n of Am. v. Prof'l Air Traffic Controllers Org., 667 F.2d 316, 323 (2d Cir. 1981) — 16

Amerisave Mortgage Corp., 363 NLRB No. 174 (2016) — 14

Belknap, Inc. v. Hale, 463 U.S. 491, 498, 77 L. Ed. 2d 798, 103 S. Ct. 3172 (1983) — 15

Bldg. Trades Emplrs. Educ. Assn. v. McGowan, 311 F3d 501, 508 [2d Cir 2002]. — 16

Brubrad Co. v. United States Postal Serv., 404 F Supp 691, affd 538 F2d 308 — 6

Bureerong v. Uvawas, 959 F. Supp. 1231 (C.D. Cal. 1997) — 9

Childs v. Levitt, 151 AD2d 318, 320 [1st Dept. 1989] — 6

Cholfin v. Gordon, 3 Mass L Rep 356, 1995 Mass. Super. LEXIS 800 at * 36, fn 3. [1995] — 10

Cordúa Restaurants, Inc. and Steven Ramirez and Rogelio Morale, 368 NLRB No. 43 (August 14, 2019) — 12, 13, 14

Deweese v. Reinhard, 165 U.S. 386, 390, 17 S. Ct. 340, 41 L. Ed. 757 (1897) — 6

Epic Systems Corp. v. Lewis, 584 U.S. __, 138 S. Ct. 1612 (2018) — 3, 11

Fibreboard Paper Prods. Corp. v. NLRB, 379 US 203 [1964] — 15

Frazier v. Courter, 958 F. Supp. 252 (W.D. Va. 1997) — 9

Garcia v. United States, 469 U.S. 70, 76, 83 L. Ed. 2d 472, 105 S. Ct. 479 (1984) — 18

Hoffmann-La Roche v. Sperling, 493 US 165, 173 [1989] — 18

Howard v. City of Springfield, 274 F.3d 1141 (7th Cir. 2001)    9

Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.,
515 U.S. 557, 573, 132 L. Ed. 2d 487, 115 S. Ct. 2338 (1995)    8

Indergit v. Rite Aid Corp., 2010 WL 1327242, at *13 (S.D.N.Y. 2010)    4, 8

International Ass'n of Machinists v. Wisconsin Employment Relations Commission,
427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976)    15

Keystone Co. v. Excavator Co., 290 U.S. 240, 245, 54 S. Ct. 146, 78 L. Ed. 293, 1934
Dec. Comm'r Pat. 639 (1933)    5

Malkentzos v. DeBuono, 102 F.3d 50, 54 (2d Cir. 1996)    21

Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748, 85 L. Ed. 2d 728, 105
S. Ct. 2380 (1985)    15

Multiwave Sensor Inc. v. Sunsight Instruments, LLC, 2017 US Dist. LEXIS 64404
[SDNY Apr. 26, 2017, No. 1:16-cv-1361-GHW]    20

N.A. of Mfrs. v. NLRB, 717 F3d 947,956 - 958 [D.C. Cir. 2013]    22

Nevada Employees' Assn. v. Bryan, 916 F2d 1384 [9th Cir 1990],    18

Novotel New York, 321 NLRB 624, 633-636 (1996)    13

N.Y. State Court Clerks Ass'n v. Unified Court Sys. of N.Y., 25 F. Supp. 3d 459, 468
(S.D.N.Y. 2014)    4, 8

Penn Plaza LLC v. Pyett, 556 U. S. 247, 256-260, 129 S. Ct. 1456, 173 L. Ed.
2d 398 (2009)    11

Poliquin v Garden Way, 989 F2d 527 [1st Cir 1993]    10

Powell v. Florida, 132 F.3d 677 (1998)    9

Raphael v. Booth Mem. Hosp., 67 AD2d 702, 703    6

Rivera v. FIS Operations, LLC, 2019 US Dist. LEXIS 173205 [CD Cal Oct. 2, 2019,
No. EDCV 19-237 JGB (SHKx)    14

Roberg v Henry Phipps Estate, 156 F2d 958 [2d Cir 1946]    9

Ruggles v. Wellpoint, Inc., 253 F.R.D. 61, 68 (N.D.N.Y. 2008)    8

Saigon Gourmet Restaurant, 353 NLRB No. 110 (2009)                                    13

San Diego Unions v. Garmon, 359 U.S. 236, 244 (1959)                                  16

Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180,
187-88, 56 L. Ed. 2d 209, 98 S. Ct. 1745                                              16

Singh v NYCTL 2009-A Trust, 2016 US Dist LEXIS 94738 at * 10[SDNY July 20, 2016]       7

Tarlton & Son, Inc., 368 NLRB No. 101, 2019 NLRB LEXIS 564 at * 7 – 8
(N.L.R.B. October 30, 2019)                                                           13

Term Indus. v. Essbee Estates, 88 AD2d 823                                             6

Transp. Servs. of St. John, 2019 NLRB LEXIS 304 at *31 (N.L.R.B. May 20, 2019)        15

UFCW, Local 1564 v. Albertson's, Inc., 207 F.3d 1193 (10th Cir. 2000)                  9

Unique Thrift Store, 2019 NLRB LEXIS 726 (N.L.R.B. December 16, 2019)                 14

United Parcel Service, Inc., 252 NLRB 1015, 1018, 1022 and fn. 26 (1989),
enfd. 677 F.2d 421 (6th Cir. 1982)                                                    13

**Statutes and Regulations**

29 USCS § 158(a)(3)                                                                                 12

29 U.S.C. 158 (d)                                                                                   18

29 U.S.C. § 215(a) (3)                                                                              10

Fed R. Civ. P. 23(b)(2)                                                                              5

NLRA (29 U.S.C. 109)                                                                                19

**Other Authorities**

52nd Street Hotel Associates, 321 NLRB 624, 624 (1996)                                              14

Cordúa Restaurants, Inc. *and* Steven Ramirez *and* Rogelio Morale, 368 NLRB No. 43
(August 14, 2019)                                                                             3, 12, 15

Electromotion, Inc., 309 N.L.R.B. 990                                                               18

Matter of New York, Lackawanna & W.R.R. Co., 98 NY 447, 453[1885])                                   7

Novotel New York, 321 NLRB 624, 633-636 (1996)                                                      14

Saigon Gourmet Restaurant, 353 NLRB No. 110 (2009)                                                  14

Tarlton & Son, Inc., 368 NLRB No. 101, 2019 NLRB LEXIS 564 (October 30, 2019)                     3, 14

United Parcel Service, Inc., 252 NLRB 1015, 1018, 1022 and fn. 26 (1989), enfd. 677
F.2d 421 (6th Cir. 1982)                                                                            14

Agilant Solutions, Inc. d/b/a ASI Systems Integration, Inc., ("Agilant"), by their attorneys, respectfully submits the following memorandum of law in opposition to Plaintiffs', Javan O'Conner ("O'Conner"), Ramin Pena ("Pena"), Jonathan Cepeda ("Cepeda") and Shawn Griffith ("Griffith") in their individual and alleged collective and/or class action statuses, and opt in plaintiffs, Rashood Earle ("Earle") and Khazaizal Tamin McGann ("McGann") (collectively referred to herein as "Plaintiffs"), motion seeking a protective order affirmatively voiding certain arbitration agreements entered into between Agilant and some of its current employees.

## PRELIMINARY STATEMENT

Plaintiffs bring this action seeking claimed underpayment of wages against Agilant under the FLSA and the New York State Labor Laws. The primary claims are that Plaintiffs were not paid for off-the-clock work. On May 14, 2019 Plaintiffs moved for preliminary collective certification under the FLSA. (Docket Entry # 46) On November 22, 2019, the Court issued a preliminary certification of an FLSA collective action. The preliminary certification was not corporate wide, but rather limited to the field technicians employed, directly or indirectly, in New York City. To date, Plaintiffs have made no motion for preliminary or full class certification under Rule 23.

Prior to the Court's ruling on the application for preliminary collective certification, Agilant implemented a company-wide policy asking all employees to execute arbitration agreements. These agreements would limit current employees to the extent of requiring them to resolve any wage disputes through final and binding arbitration under the auspices of the American Arbitration Association ("AAA"). Employees were not affirmatively advised of the pending suit when they were asked to sign the arbitration agreements. Almost all current employees, both those who could have been potential collective parties to this lawsuit, and the

1

balance of the employment complement, who are not in any way connected or potentially connected to this lawsuit, executed and returned the signed arbitration agreements. A few employees declined to sign the arbitration agreements and requested more time to review. Most employees who initially declined to sign the arbitration agreements eventually did sign. No actions were taken against any employee who did not sign the arbitration agreements. They continue to be employed and have suffered no consequence. These facts are not in dispute. At the present time Plaintiffs have not produced any evidence to even remotely suggest that any currently employed individual, who was asked to sign the arbitration agreement, had been or is currently represented by any representative in the context of the pending litigation. In fact it is conceded that Plaintiffs' counsel has not been in contact with any of the proposed class members, other than the current Plaintiffs.

As noted above, on November 22, 2019, the Court granted Plaintiffs' motion for preliminary certification of the collective class under the FLSA. Plaintiffs have still not sought preliminary certification under Rule 23. Plaintiffs now move by way of an application for a protective order to void the arbitration agreements as such are alleged to have been solicited without giving employees sufficient information concerning their opt-in rights. Plaintiffs do not identify the statutory basis for the relief sought in the notice of motion. (See Docket Entry # 74.) Such fails to comport with Local Rule 7.1, which mandates:

> Motion Papers(a) Except for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include the following motion papers:(1) A notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion;

Notwithstanding non-compliance with the Local Rule, it will be demonstrated below, that Plaintiffs have affirmatively waived any rights to seek this relief, having affirmatively withdrawn all claims to entitlement to any form of preliminary injunctive relief. It will be further

established that under the FLSA only the Secretary of Labor has standing to seek any form of equitable relief on behalf of non-parties in the context of conduct subject to the FLSA. Parties to an FLSA lawsuit may have standing to seek injunctive relief, but only to the extent employer action is specifically retaliatory to them, not to others. To the extent that Plaintiffs will be relying upon case law developed under Rule 23, such relief is not available at this juncture, as Plaintiffs have not even made a prima facie entitlement to Rule 23 certification. The issue at hand involves only the preliminarily certified collective class, and the effect of the arbitration agreements on their rights to opt in to the collective class. Argument will be presented based upon the Supreme Court decision in Epic Systems Corp. v. Lewis, 584 U.S. __, 138 S.Ct. 1612 (2018), and two recent decisions of the National Labor Relations Board (NLRB). All three decisions rule in favor of an employer's absolute right to demand of its employees, as a condition of employment or continued employment, an agreement to arbitrate FLSA disputes on an individual basis, and thereby waive all rights to participate in pending Rule 23 class action or a collective action under the FLSA. It will further be established that Plaintiffs have not met the burden of entitlement to injunctive relief under the Federal Rules.

### Procedural History

The matter was initiated by Plaintiffs by the filing of a collective class claim on August 1, 2018. (Docket Entry # 1) Plaintiffs' filed, as of right, a First Amended Complaint on September 6, 2018. (Docket Entry # 12) Pursuant to the Your Honor's Rules of Individual Practice, Agilant filed a pre-motion conference request on December 11, 2018, seeking, inter alia, leave to move to dismiss all claims to entitlement to any form of injunctive relief. (Docket Entry # 22). The letter stated in pertinent part:

> The undersigned is counsel to Agilant... The following letter is submitted
> pursuant to Section 2.C of Your Honor's Individual Rules of Practice, for the

3

purpose of requesting a pre-motion conference to address Defendant's desire to file a motion for partial dismissal of the complaint for failure to state a cause of action. As will be summarized below, Defendant seeks to dismiss that portion of the Amended Complaint that seeks injunctive relief …

The First Amended Complaint included a claim specifically seeking an injunction against Agilant for, inter alia, the conduct that Plaintiffs now seek to retroactively void. In this context, the First Amended Complaint labeled itself as:

**AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT
FOR DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF**

(Bold printing and emphasis in the original.) The First Amended Complaint asserted:

> 8.    Plaintiffs seek relief for the Class pursuant to the applicable provisions of the NYLL and Collective Class under the FLSA, to remedy the Defendants' failure to pay all wages due, <u>in addition to injunctive relief</u>. (Emphasis added.)

At the time of the filing it was Agilant's position that no injunctive relief, of any nature, was available to Plaintiffs and hence, the request by Agilant for leave to move for dismissal of all claims to entitlement to injunctive relief. In response, to Agilant's pre-motion conference letter, Plaintiffs, by letter dated December 17, argued to the Court, inter alia:

> Plaintiffs' Complaint seeks an order from this Court enjoining Defendants from further violations of the FLSA and NYLL. (Amended Compl. ¶ F of "Prayer for Relief"). Here, Plaintiffs seeks to certify an FLSA collective action and a Rule 23 class that will include current employees, and that accordingly injunctive relief may be appropriate. For example, Plaintiff will urge this Court to enjoin Defendants from retaliating against any current employees who are part of a certified FLSA collective action, which would clearly be a violation of the FLSA and NYLL. Plaintiffs will also seek to include terms in any potential Rule 23 notices prohibiting retaliation. Courts in the Southern District have denied motions to dismiss claims for injunctive relief in identical factual situations. See <u>Indergit v. Rite Aid Corp.</u>, 2010 WL 1327242, at *13 (S.D.N.Y. 2010) (denying motion to dismiss claims for injunctive relief to enjoin retaliation on behalf of a FLSA collective and Rule 23 class, even though the named plaintiff was a former employee and could not himself seek injunctive relief.). Additionally, Rule 23(b) (2) specifically allows for classwide injunctive (sic) relief. See Fed. R. Civ. P.

4

23(b) (2). The case Defendant cites to support their claim that injunctive relief is not available is wholly inapplicable and did not deal with former employees' standing. See N.Y. <u>State Court Clerks Ass'n v. Unified Court System of the State of N.Y.</u>, 25 F.Supp.3d 459, 466 (S.D.N.Y. 2014) (finding that an Association did not have standing to sue on behalf of its members and could not seek injunctive relief under the FLSA). <u>As such, Plaintiffs' claims for injunctive relief to enjoin any potential retaliation under the FLSA and NYLL cannot be dismissed nor are Plaintiffs barred under Rule 23 from seeking injunctive relief.</u> (Emphasis added.)

(Docket Entry # 24). In due course, the Court set a briefing schedule on Agilant's motion to dismiss all claims for injunctive relief. However, the need for the motion was mooted when the parties stipulation to waive any and all rights to seek injunctive relief. The stipulation reads, in pertinent part:

1. Defendant hereby agrees not to file a pre-answer partial motion to dismiss the portions of the Amended Complaint seeking injunctive relief and the portions of the Amended Complaint seeking either collective or class certification and <u>Plaintiffs hereby agree to amend their complaint to remove any claims for injunctive relief.</u>

2. <u>....</u>

<u>2 [sic]. As set forth in the SAC, all claims for injunctive relief shall be withdrawn as of the date the Court approves this Stipulation and Order.</u> (Emphasis added.)

(Docket Entry # 29)  On January 30, 2019, the Your Honor allowed for the Second Amended Complaint to be filed, but Your Honor specifically took no position on the balance of the stipulation. (Docket Entry # 30).

## ARGUMENT

### Point I – Plaintiffs have waived their rights to seek a protective order.

Plaintiffs have waived any and all claims to seek injunctive relief and Defendants have relied on such waivers. Based upon the instant motion, the reliance was to Agilant's detriment. Injunctive relief is an equitable principal, which requires the moving party to come to the Court in good faith and with clean hands. Clean hands is predicated upon a plaintiff's claim of

inequitable conduct which is related to matters involved in the suit. <u>Keystone Co. v. Excavator</u> <u>Co., 290 U.S. 240, 245, 54 S. Ct. 146, 78 L. Ed. 293, 1934 Dec. Comm'r Pat. 639 (1933)</u>.  At hand Plaintiffs have stipulated that injunctive relief is not a "matter involved in the suit". Agilant, having relied upon this promise, altered its position in the litigation to its detriment. Plaintiffs cannot overcome the argument of waiver.  The waiver is binding, even if in the absence of the waiver, Plaintiffs would have been entitled to the injunctive equitable relief they now seek. See <u>Deweese v. Reinhard,</u> 165 U.S. 386, 390, 17 S. Ct. 340, 41 L. Ed. 757 (1897), as cited in <u>Keystone</u>, supra.

 Even if the stipulation is inconsistent with the FLSA it still must be enforced. "Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights." <u>Matter of New York, Lackawanna &</u> <u>W.R.R. Co</u>., 98 NY 447, 453[1885]); As the New York Appellate Division held in the context of a stipulation entered into in the course of an earlier FLRA suit:

> "Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights" (Matter of New York, Lackawanna & W.R.R. Co., 98 NY 447, 453). In essence, petitioners seek to be relieved from the terms of the stipulation on the ground that, on further reflection upon the facts and circumstances surrounding its execution, their representative in the Federal class action would have sought to employ greater precision in its draftsmanship. It is not alleged that the relevant facts, including the pendency of the State court action and the injunction issued by Justice Blyn, were unknown at the time the settlement was executed. A stipulation operates as a binding contract, and the contractual theory of mutual mistake "affords equitable relief only where the parties were mistaken as to facts existing at the time the contract was entered into (see Restatement, Contracts, § 502). Equity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain (see, e.g., <u>Brubrad Co. v. United</u> <u>States Postal Serv</u>., 404 F Supp 691, affd 538 F2d 308)" (<u>Raphael v. Booth Mem.</u> <u>Hosp.</u>, 67 AD2d 702, 703; see also, <u>Term Indus. v. Essbee Estates</u>, 88 AD2d 823).

Childs v. Levitt, 151 AD2d 318, 320 [1st Dept 1989]; see also, AGCS Mar. Ins. Co. v World Fuel Servs., 187 F. Supp. 3d 428, 446 [SDNY 2016] - Equity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain; Singh v NYCTL 2009-A Trust, 2016 US Dist LEXIS 94738 at * 10 [SDNY July 20, 2016] -[I]t has long been recognized that a stipulation need not be consistent with applicable statutes. . . . [Parties] 'may stipulate away statutory, and even constitutional rights.'; accord: Blue Cross & Blue Shield of New Jersey, Inc. v Philip Morris, Inc., 53 F Supp 2d 338 [EDNY 1999]. The labeling of the motion as one of a protective nature, does not remove it from the stipulation of the parties and Agilant's reliance, to its detriment, on the stipulation. The only exception to a Court's not honoring the parties' stipulation is where the stipulation is unreasonable and against good morals or sound public policy. Matter of New York, Lackawanna & W.R.R. Co., 98 NY at 453; See also, Hamilton v Accu-Tek, 47 F Supp 2d 330 [EDNY 1999]) Such could hardly be the case, as Plaintiffs could have limited the potential collective class to former employees, and such would have been well within their right to do so. (This was discussed in the pre-motion telephone conference as one of the options in lieu of the instant motion.) Plaintiffs, in their opposition to the pre-motion letter specifically objected to waiving any form of prospective relief of this nature. Plaintiffs argued to the Court that they would not waive the right to enjoin any potential retaliation under the FLSA. Agilant relied upon Plaintiffs' clear and unambiguous agreement to drop any and all claims for current or future affirmative injunctive relief in this lawsuit.

The case law establishes an affirmative desire by the courts to be able to publicize potential collective participation, by compelling a party to disclose facts it does not wish to disclose while a collective class action is pending, even without any findings as to the merits of

7

the claims. The Courts believe that compelled speech is appropriate if an employer wishes to institute new policies, including requesting arbitration agreements.  Agilant wished to address this issue at the commencement of the litigation.  Plaintiffs on the other hand did not anticipate every potential possibility for a need to seek injunctive relief. In retrospect Plaintiffs may regret having waived their rights to seek injunctive relief on behalf of non-parties to this lawsuit. Plaintiffs assert that for Agilant to arguably be permitted to solicit arbitration agreements, Agilant had to, at a minimum, advice the employees of the pending action prior to requesting signatures on the arbitration agreements. Thus, Agilant would be required to engage in compelled or forced speech at a time that it chose not to say anything.  Agilant should not be required under any reading of the law to espouse any ideological point of view on any pending matter. "One important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say". <u>Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc</u>., 515 U.S. 557, 573, 132 L. Ed. 2d 487, 115 S. Ct. 2338 (1995). (See Point V, infra.)  Hence Agilant's request for a pre-motion conference and its request for leave to move for dismissal of any and all claims for injunctive remedies in this action.  As the parties have stipulated to preclude the specific relief which Plaintiffs now seek to obtain, the motion should be denied in its entirety.

### Point II: Plaintiffs lack standing to seek injunctive relief under the FLSA.

The law is clear that individuals lack standing to seek injunctive relief under the FSLA. As Judge Sweet held in <u>N.Y. State Court Clerks Ass'n v. Unified Court Sys. of N.Y</u>., 25 F. Supp. 3d 459, 468 (S.D.N.Y. 2014)

> As noted above, only the United States Secretary of Labor is authorized to seek injunctive relief for alleged violations of the FLSA's minimum wage and overtime compensation provisions. Employees themselves have no right to seek

injunctive relief under those provisions. See, e.g., <u>Indergit v. Rite Aid Corp., No. 08 Civ. 9361 (PGG), 2010 U.S. Dist. LEXIS 32322, at *42-43 (S.D.N.Y. Mar. 31, 2010)</u> ("An injunction is not an available remedy in an action brought by employees under the FLSA for failure to pay . . . overtime compensation." (quotation marks omitted)); <u>Ruggles v. Wellpoint, Inc., 253 F.R.D. 61, 68 (N.D.N.Y. 2008)</u> (striking employees' demand for injunctive relief under minimum wage and overtime provisions of FLSA).

Accord: <u>Powell v. Florida</u>, 132 F.3d 677 (1998); <u>Roberg v Henry Phipps Estate</u>, 156 F2d 958 [2d Cir 1946]; <u>UFCW, Local 1564 v. Albertson's, Inc.</u>, 207 F.3d 1193 (10th Cir. 2000); <u>Howard v. City of Springfield</u>, 274 F.3d 1141 (7th Cir. 2001), reh'g denied, reh'g, en banc, denied, 2002 U.S. App. LEXIS 1791 (7th Cir. Feb. 4, 2002); <u>Frazier v. Courter</u>, 958 F. Supp. 252 (W.D. Va. 1997); <u>Bureerong v. Uvawas</u>, 959 F. Supp. 1231 (C.D. Cal. 1997). Plaintiffs do not contend that any of the Plaintiffs or previously opted in Plaintiffs were affected by the arbitration agreement requests. Hence, the relief sought would be applicable to non-parties to this action.

There are a limited number of areas wherein an individual plaintiff has standing to seek injunctive relief under the FLSA. These areas address retaliatory claims specifically aimed at the plaintiff in the pending action. The FLSA includes a web of provisions governing equitable relief and who may seek it. Yet, Section 215(a) (3) of the FLSA straightforwardly provides that:

> it shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding.

29 U.S.C. § 215(a) (3). As an initial point, there can be no discrimination simply because every employee of the company was asked to sign an arbitration agreement. Agilant did not limit the request to only the currently employed technicians in New York City. Had Agilant limited its requests to only the potential collective class employees, such would have been a form of discrimination.

In order to come within the statutory protection of this provision, the offending conduct must be: 1) an affirmative act ("to discharge or in any other manner discriminate"); 2) involve an employee ("an employee"); and 3) the employee must fit into a specific category of having, 4) "file[d] a complaint or instituted or caused to be instituted any proceeding."  Alternatively, protection is granted to an employee "who has testified or is about to testify" in an FLSA proceeding. A potential class participant, while meeting the test of being an "employee", is not an employee who has engaged in any of the requisite acts enumerated by the statute so as to qualify for injunctive protection under Section 215 (c).  A potential collective class participant has not filed a complaint or instituted or caused to be instituted any action. Nor is a potential class participant someone who has testified or is about to testify.  This does not leave the potential class participant without a remedy.  The NLRB (See infra at Point III.) or the Secretary of Labor (supra.) are available to address any perceived discriminatory conduct.

Moreover, it appears that Plaintiffs are attempting to avoid this obstacle by labeling the injunctive relief sought as that of a "protective order" and by not citing to any statutory authority as the basis for the relief.  Regardless of the nomenclature that Plaintiffs uses to label the relief sought, a protective order acts as any ongoing injunction. Poliquin v. Garden Way, 989 F2d 527 [1st Cir 1993].  Hence only the Secretary of Labor may seek this type of affirmative relief.  It should be noted, that protective orders are generally intended to prevent future conduct; not undo past conduct.

> Sanctions are designed to compensate for or punish past conduct. Protective orders are designed to ward off future problems. The two thus serve very different functions even though need for their application may be revealed by the very same set of historical facts.

Cholfin v. Gordon, 3 Mass L Rep 356, 1995 Mass. Super. LEXIS 800 at * 36, fn 3. [1995].

While the Court does have equitable powers under Rule 23(d), this equitable authority applies only to applications made in the context of a Rule 23 class certification process. The power does not flow to applications brought solely under the FLSA collective class process. As established above, under the FLSA only the Secretary of Labor may seek equitable relief of the nature of which Plaintiffs petition the Court. (See Argument at Point IV below.)

**Point III: Recent case law precludes the Courts from granting the relief requested.**

In <u>Epic Sys. Corp. v. Lewis</u>, ___US___, 138 S Ct 1612, 1616, 200 L. Ed. 2d 889 [2018] the Supreme Court addressed the legality of individual arbitration agreements signed by employees waiving their rights to seek relief under the FLSA in Court. The Court summarized the argument and held:

> In each of these cases, an employer and employee entered into a contract providing for individualized arbitration proceedings to resolve employment disputes between the parties. Each employee nonetheless sought to litigate Fair Labor Standards Act and related state law claims through class or collective actions in federal court. Although the Federal Arbitration Act generally requires courts to enforce arbitration agreements as written, the employees argued that its "saving clause" removes this obligation if an arbitration agreement violates some other federal law and that, by requiring individualized proceedings, the agreements here violated the National Labor Relations Act. The employers countered that the Arbitration Act protects agreements requiring arbitration from judicial interference and that neither the saving clause nor the NLRA demands a different conclusion. Until recently, courts as well as the National Labor Relations Board's general counsel agreed that such arbitration agreements are enforceable. In 2012, however, the Board ruled that the NLRA effectively nullifies the Arbitration Act in cases like these, and since then other courts have either agreed with or deferred to the Board's position.
> Held:
> Congress has instructed in the Arbitration Act that arbitration agreements providing for individualized proceedings must be enforced, and neither the Arbitration Act's saving clause nor the NLRA suggests otherwise. Pp. ___ - ___, 200 L. Ed. 2d, at 898-911.

Thus, there is nothing that would suggest that the arbitration agreements at hand are unlawful.

The Supreme Court ruled that an employer may enforce a ban on bringing collective actions under the FLSA against any employee who has signed the arbitration agreement. The Supreme

Court noted that the issue of arbitration is a subject that falls within the framework of negotiations.  The Court wrote:

> Section 7[1] focuses on the right to organize unions and bargain collectively. It may permit unions to bargain to prohibit arbitration. Cf. 14 <u>Penn Plaza LLC v. Pyett</u>, 556 U. S. 247, 256-260, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009)

138 S Ct at 1624.

In <u>Cordúa Restaurants, Inc. *and* Steven Ramirez *and* Rogelio Morale</u>, 368 NLRB No. 43 (August 14, 2019) the National Labor Relations Board ("NLRB") had its first opportunity to address the Supreme Court's decision in <u>Epic</u>.  The NLRB specifically held that issues arising under compelled[2] signing of waivers in FLSA matters were under the NLRB's jurisdiction to police.  The NLRB held:

> In Epic Systems Corp. v. Lewis, 584 U.S. ___, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018), the Supreme Court held that agreements containing class- and collective-action waivers and stipulating that employment disputes are to be resolved by individualized arbitration do not violate the National Labor Relations Act and must be enforced as written pursuant to the Federal Arbitration Act. This case presents two important issues of first impression regarding mandatory arbitration agreements following Epic Systems: (1) whether the Act prohibits employers from promulgating such agreements in response to employees opting in to a collective action; and (2) whether the Act prohibits employers from threatening to discharge an employee who refuses to sign a mandatory arbitration agreement. Consistent with Epic Systems, we find that the Act contains no such proscriptions. <u>We reaffirm, however, longstanding precedent establishing that Section 8(a)(1) prohibits employers from disciplining or discharging employees for engaging in concerted legal activity, which includes filing a class or collective action with</u>

---

[1] Section 7 of the NLRA reads:

§ 157. Rights of employees as to organization, collective bargaining, etc.

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3) [29 USCS § 158(a)(3)].

[2] At hand no-one was compelled to sign the arbitration agreement.  Those who declined to sign suffered no consequence.

fellow employees over wages, hours, or other terms and conditions of
employment. (Emphasis added.)

The NLRB has confirmed that questions involving retaliations for compelling employees to sign

arbitration agreements fall within the NLRB's jurisdiction.  In a subsequent NLRB decision, the

Board had a second opportunity to review the legality of mandatory arbitration agreements in the

face of a pending FLSA lawsuit.  The Board held:

> In its recent decision in Cordúa Restaurants, Inc., 368 NLRB No. 43 (2019), the
> Board reaffirmed long-standing precedent establishing that Section 7 of the Act
> protects employees when they pursue legal claims concertedly. Id., slip op. at 4.
> We therefore agree with the finding in the prior Board decision that Munoz and
> the other two employees were engaged in protected concerted activity when they
> filed their lawsuit. Nevertheless, the Board also held in Cordúa that the
> promulgation of an individual arbitration agreement in response to Section 7
> activity does not violate the Act. Id., slip op. at 2. As the Board there explained,
> the Supreme Court's decision in Epic Systems establishes that requiring
> employees to resolve their employment-related claims through individual
> arbitration rather than through collective action does not restrict the exercise of
> Section 7 rights. Id. Moreover, here, as in Cordúa Restaurants, the MAP "is
> enforceable in court or before an arbitrator; nothing in its terms suggests that
> employees would be disciplined for failing to abide by its provisions." Id., slip op.
> at 3. Accordingly, for the reasons stated in Cordúa Restaurants, to find that the
> promulgation of the MAP violated the Act because it was in response to Section 7
> activity would be inconsistent with the Supreme Court's holding in Epic Systems
> that individual arbitration agreements do not violate the Act and must be enforced
> according to their terms. We therefore find that the Respondent's promulgation of
> the MAP was lawful, and we dismiss the complaint.

Tarlton & Son, Inc., 368 NLRB No. 101, 2019 NLRB LEXIS 564 at * 7 – 8 (N.L.R.B. October

30, 2019).[3]  In a footnote in Tarlton, the Board reversed an earlier NLRB finding of an unfair

labor practice in a scenario quite similar to that at hand.  In overruling the case the Board held:

---

[3]  The NLRB has always found the filing of an FLSA case seeking collective participation to be
protected concerted activity.  For example, in Novotel New York, 321 NLRB 624, 633-636
(1996), the NLRB found that an "opt-in" class action lawsuit alleging employer violations of the
FLSA was within the NLRB's jurisdiction. Similarly, in United Parcel Service, Inc., 252 NLRB
1015, 1018, 1022 and fn. 26 (1989),   enfd. 677 F.2d 421 (6th Cir. 1982), the NLRB found that
an employer unlawfully discharged an employee for bringing a class action lawsuit regarding
employee rest breaks, conduct enforced under the FLSA.  In Saigon Gourmet Restaurant, 353

13

We also overrule Amerisave Mortgage Corp., 363 NLRB No. 174 (2016), to the extent it is inconsistent with this decision and Cordúa Restaurants, above. In Amerisave Mortgage, 1 week after employees filed an FLSA collective action, the respondent issued a revised mandatory arbitration agreement that precluded employees from initiating or maintaining a court action concerning employment-related matters and from pursuing class or collective claims in arbitration. The Board found that the respondent violated Sec. 8(a)(1) by promulgating the revised agreement in response the employees' protected activity of filing the FLSA lawsuit. 363 NLRB No. 174, slip op. at 3-4, fn. 16. Under Cordúa Restaurants and our decision today, however, the promulgation of an arbitration agreement that requires employees to waive their right to pursue employment disputes through class or collective actions, even in response to the concerted filing of such an action, does not violate the Act.

2019 NLRB LEXIS 564 at * 8 – 9.  The NLRB has ruled that the conduct of which the Plaintiffs

seek relief has been addressed by the NLRB and the NLRB, the Federal Agency specifically and

exclusively authorized to address this issue, has found the conduct to be lawful.  This should end

the Court's inquiry into Plaintiffs' application.  Distinguishing the NLRB decision in Cordúa

Restaurants, the District Court for the Central District of California, in Rivera v. FIS Operations,

LLC, 2019 US Dist. LEXIS 173205 [CD Cal Oct. 2, 2019, No. EDCV 19-237 JGB (SHKx)], just

recently opined that but for the parties' stipulation to not communicate with class members,

under  Cordúa Restaurants, an employer has a lawful right to unilaterally condition employment

on signing an arbitration agreement during the pendency of a collective action.[4]

It is anticipated that Plaintiffs will argue that the mere fact that the NLRB has ruled the

conduct to be lawful, does not preclude the Court, from exercising its general powers under a

different law so as to void the arbitration agreements.  Plaintiff does not articulate the specific

---

NLRB No. 110 (2009) the NLRB found a wage and hour lawsuit to be clearly protected concerted activity under the NLRA and in  52nd Street Hotel Associates, 321 NLRB 624, 624 (1996)  the NLRB found once again that a collective action under FLSA was protected activity.

[4] The NLRB some weeks ago again cited Cordúa Restaurants for the proposition that an employer may not discipline an employee for exercising the protected right to pursue collective action. Unique Thrift Store, 2019 NLRB LEXIS 726 (N.L.R.B. December 16, 2019)

law that grants the Court this power. To the extent a State law (i.e. New York wage and hour laws) will be identified and argued as granting the Court the independent power to nullify the arbitration agreements, Agilant posits that the preemption doctrine precludes the Court from addressing any claims as to the lawfulness or enforceability of the arbitration agreements which are the subject this motion. The Supreme Court decision in Epic and the recent NLRB decisions make it abundantly clear that Agilant was under no duty to inform its employees of the pending lawsuit prior to asking them to execute the arbitration agreements.

The overall objectives of the National Labor Relations Act ("NLRA") mandate that employers and labor representatives bargain over wages, hours and other terms and conditions of employment. Section 8(d) proscribes that a party will be deemed to fail to bargain in good faith upon the refusal to bargain over one of these mandatory subjects of collective bargaining. See, generally Fibreboard Paper Prods. Corp. v. NLRB, 379 US 203 [1964]. The area of grievance arbitration is a mandatory subject of collective bargaining. See, e.g. Transp. Servs. of St. John, 2019 NLRB LEXIS 304 at * 31 (N.L.R.B. May 20, 2019). Since the arbitration agreements at hand constitute a mandatory subject of bargaining, the area of policing an employer's implementation of such a requirement falls under the exclusive jurisdiction of the NLRA. This brings into play the broad preemptive effect of the NLRA.

Under the "Garmon Preemption" doctrine,[5] (San Diego Unions v. Garmon, 359 U.S. 236, 244 (1959)):

---

[5] A second type of preemption, known as "Machinists Preemption" is not applicable. This preemption doctrine derives from the case, Lodge 76, International Ass'n of Machinists v. Wisconsin Employment Relations Commission, 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976) and is intended to protect employers' and labors' use of economic weapons that Congress aimed for them to have freely available.

states may not regulate behavior covered by § 7 or § 8 of the NLRA or behavior arguably covered by either of those two sections. See also Belknap, Inc. v. Hale, 463 U.S. 491, 498, 77 L. Ed. 2d 798, 103 S. Ct. 3172 (1983) (articulating Garmon preemption boundaries). Sections 7 and 8 of the Act regulate "concerted activities" and "unfair labor practices," respectively, seeking to protect the former and stamp out the latter. 29 U.S.C. §§ 157, 158 (codifying § 7 and § 8 of the NLRA). Garmon preemption protects the Board's primary jurisdiction to decide what conduct is protected or prohibited in labor-management relations under the NLRA. Such preemption thereby assures a coherent national labor policy. See Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985); Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 187-88, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978); see also Air Transp. Ass'n of Am. v. Prof'l Air Traffic Controllers Org., 667 F.2d 316, 323 (2d Cir. 1981) ("Garmon rests primarily on the need to ensure a consistent body of federal labor law by preempting potentially inconsistent state court adjudication.").

Bldg. Trades Emplrs. Educ. Assn. v. McGowan, 311 F3d 501, 508 [2d Cir 2002]. The regulating of "concerted activities" which is encompassed in Sections 7 and 8 of the NLRA, include the concerted activities of participation in a class or collective action. Hence, under Garmon Preemption, any conduct of an employer that has the potential to infringe upon the concerted participation in either an FLSA collective class or a State law class action under Rule 23, would be preempted by the NLRA. The institution of a corporate wide request to sign an arbitration agreement falls squarely within the preemption doctrine. Garmon mandates that the State law class remedial claims under Rule 23 yield to the NLRA's remedial scheme.[6]

---

[6] The Court need not address the issue of whether Garmon Preemption is available where there are two Federal Statutes involved. At hand the FLSA allows for the Secretary of Labor to seek injunctive relief of the nature being sought. The FLSA simply does not provide a legislated right to individual relief on behalf of those not party or not yet party to the action. Should the Court believe that Garmon Preemption does not apply to the conflicting remedial schemes of the FLSA and the NLRA, it is posited that under the doctrine of Primary Jurisdiction, the NLRB's jurisdiction over the dispute takes precedence over any other potential Federal statutory forum. For a summary of the conflicting opinions in this area, see, A. Terzi Prods. v Theat. Protective Union, Local No. One, 2 F. Supp. 2d 485 [SDNY 1998].

The Court need not address the existence of a labor union as being actively involved in the representation process, so as to bring the issues under the NLRA's exclusive jurisdiction. It is the concerted acts of the class participants which are the focus, and not the identity of their labor representative. This notwithstanding, during the pre-motion telephone conference the Court elicited Agilant's position on this question. It is posited that in the context of a law firm's attempts to represent a class of employees for purposes of securing them wages allegedly earned, the law firm would meet the NLRA's definition of a "labor organization".

Counsel for Agilant has searched and found no precedent under the NLRA or the FLSA in which this argument was addressed. While this novel argument may not need to be addressed in the context of the collective certification process, it may need to be addressed in the context of a State class certification application. If the argument is successful, such would serve as an additional basis for the State law class issues to be preempted by the statutory scheme of the NLRA.

In the previously cited NLRB decision of Novotel, the question was whether participation in an FLSA collective action sponsored by a union, which union provided the availability of a law firm to represent the employees in an FLSA case at no cost to the employee, met the definition of protected concerted coactivity and hence subject to the NLRA's exclusive jurisdiction. In Novotel the NLRB did not have to address the status of the law firm as a "labor organization", as a union was the sponsoring entity and it was the union that was actually seeking to represent the employees in all areas of labor relations, to wit, wages, hour and other terms and conditions of employment. (See Section 8(d) of the NLRA, 29 U.S.C. 158 (d).) At hand the question would be whether lawyers seeking to represent employees in only a limited area of the areas covered by Section 8 (d), such as only wages and hour issues, brings the law

firm into the definition of a labor organization.[7] The argument begins with the NLRA's definition of "labor organization". Section 2(5) of the Act defines a "labor organization" as follows:

> The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

In Electromotion, Inc., 309 N.L.R.B. 990 (N.L.R.B. December 16, 1992) the NLRB provided a detailed description of the legislative history of the intended definition of a "labor organization". Congress clearly had in mind the concept that a labor organization was not limited to what we know as unions. After review of the statutory history and precedent the NLRB stated in no uncertain terms:

> In sum, Congress brought within its definition of "labor organization" a broad range of employee groups, and it sought to ensure that such groups were free to act independently of employers in representing employee interests.

Turning to the FLSA, the Supreme Court decision in Hoffmann-La Roche v. Sperling, 493 US 165, 173 [1989] is instructive as to the legislative history of the collective action and the identity of the parties to such. The Court noted:

> In 1938, Congress gave employees and their "representatives" the right to bring actions to recover amounts due under the FLSA. No written consent requirement of joinder was specified by the statute. (Emphasis added.)

However, the FLSA did not define the term "representative". The Ninth Circuit, in Nevada Employees' Assn. v Bryan, 916 F2d 1384 [9th Cir 1990]), provides a detailed analysis of

---

[7] It should be noted that the Second Amended Complaint has additional claims unrelated to the Federal and State wage claims, including, claims for violations of New York notice requirements, unreimbursed charges for materials, etc. These areas also are encompassed within the Fibreboard descriptions of subjects of mandatory subjects for bargaining.

the history of the definition of what or who constitutes a representative under the FLSA. The

Court held:

> Although § 7(o) of the FLSA does not specifically mention the term "recognized
> representative," there are three sources from which the court drew this
> interpretation of § 7(o): the legislative history concerning § 7(o), the regulations
> promulgated by the Secretary of Labor to implement § 7(o), and a letter written
> by the sponsors of the 1985 amendments which included § 7(o).

> Because the statute is silent as to the definition of "representative," this court must
> examine the Committee Reports to determine the legislative intent of the bill.
> Garcia v. United States, 469 U.S. 70, 76, 83 L. Ed. 2d 472, 105 S. Ct. 479 (1984)
> (cites omitted). However, the House and Senate Reports offer different views of
> the meaning of § 7(o). Abbott v. City of Virginia Beach, 879 F.2d 132, 135 (4th
> Cir. 1989), cert. denied, 493 U.S. 1051, 107 L. Ed. 2d 848, 110 S. Ct. 854 (1990).
> The House Report states: <u>"Where employees have selected a representative,
> which need not be a formal or recognized collective bargaining agent as long as it
> is a representative designated by the employees, the agreement or understanding
> must be between the representative and the employer. . . ."</u> H.R. Rep. No. 331,
> 99th Cong., 1st Sess. 20 (1985), quoted in Abbott v. City of Virginia Beach, 879
> F.2d at 135 (emphasis added). The Senate Report states: "Where employees do
> not have a recognized representative, the agreement or understanding must be
> between the employer and the individual employee." S.Rep.No.159, 99th Cong.,
> 1st Sess. 10, reprinted in 1985 U.S. Code Cong. & Admin. News 651, 658
> (emphasis added)

The Nevada case stands for the proposition that the representative can negotiate wages and hour

issues arising under the FLSA.   At hand, Agilant does not challenge the representative status of

the Plaintiffs' attorneys as representing the Plaintiffs and the already opted in Plaintiffs in their

quest for additional wages.  However, in the context of this action Agilant is being compelled to

participate in conduct that provides assistance to the labor representative in its attempts to

organize and represent the entire current complement of employees of Agilant. Plaintiffs'

representatives are seeking to compel Agilant to compromise on its First Amendment rights by

being required to engage in forced speech, as a condition of instituting a corporate wide policy of

asking all current employees to execute arbitration agreements.   The forced speech is at a time

when Agilant's current complement of employees is being organized by Plaintiffs'

19

representative. Plaintiffs would have no argument had Agilant, in asking employees to sign arbitration agreements affirmatively informed them of the pending action and their rights thereunder. Agilant is being compelled to defend against its conduct during this organizational drive. The oversite of the entire representational process is vested in the exclusive jurisdiction of the NLRA. Section 9 of the NLRA (29 U.S.C. 109) sets forth the exclusive procedural format for establishing a representative status.[8] Hence, if the Court addresses the relationship of a law firm to the NLRB's definition of "labor organization" there is an additional basis for pre-emption as the area of organization under Section 9 would preempt any other forum from addressing the issues.

#### Point IV – The Court should not rely on Rule 23 precedent in determining matters solely involving the FLSA.

It is posited that the cases cited by Plaintiffs granting the Court the inherent power to oversee class action conduct, involve Rule 23 class issues or a failure to distinguish between the laws applicable to class actions brought pursuant to Rule 23 and the laws applicable to collective actions under the FLSA. As established above, Plaintiffs do not have standing under the FLSA to seek the injunctive relief herein requested. As the recent Supreme Court precedent and NLRB decisions demonstrate these types of communications fall under the NLRB's primary jurisdiction. The NLRB has held that collective participation in an FLSA collective action, constitutes conduct proscribed as protected conduct under the NLRA. Since this conduct falls

---

[8] Plaintiffs may argue that they are not bound by the NLRB's requirement of representing a majority of the unit. There is abundant precedent that even a minority representative has legal authority to bind the employer on behalf of those limited employees who have designated the minority representative. See, e.g. With Traditional Unions on the Decline, Can Members-Only Unions Breathe Life Back Into Labor?, Moshe Marvit and Leigh Anne Schriever, https://tcf.org/content/report/members-only-unions-can-they-help-revitalize-workplace-democracy/.

within the auspices of the NLRB, Agilant argues that the FLSA, being silent on this issue, is preempted.

Plaintiffs have failed to comply with Local Rule 7.1 of identifying in the notice of motion the specific statutory basis upon which the motion is premised. (Multiwave Sensor Inc. v. Sunsight Instruments, LLC, 2017 US Dist LEXIS 64404 [SDNY Apr. 26, 2017, No. 1:16-cv-1361-GHW]) Although this failure is often excusable, nonetheless the failure could, in and of itself, result in a denial of the application. Plaintiffs' brief seems to sidestep the statutory authority for the motion, relying primarily on the general powers of the Court to regulate its cases and in particular Rule 23 class actions.

The reason for the omission has to be that this application is in reality a request for affirmative or mandatory injunctive relief. As such the proscriptions of FRCP 65 would apply. The evidentiary basis for entitlement to injunctive relief is set at a very high bar. Contrast with the very low bar for preliminary collective certification. Moreover, the test for an affirmative or mandatory injunction is an even higher bar than for a prohibitory injunction (one that maintains the status quo), requiring that the movant demonstrate that extreme or very serious damage will result in the absence of the mandatory injunctive relief. Malkentzos v. DeBuono, 102 F.3d 50, 54 (2d Cir. 1996). As summarized above, the relief is absolutely not available under the FLSA. As to relief under the general powers of the Court in the context of Rule 23 applications, Plaintiffs have made a zero showing of entitlement to even a preliminarily certified Rule 23 class. The cases summarized by Agilant in the preliminary collective certification application, establish, without exception, that Rule 23 class certification is simply not available in the context of allegations of off-the-clock claims for overtime. Plaintiffs' likelihood of success on the Rule

23 application is significantly low. Mandatory injunctive relief is not proper in these circumstances.

### Point V: Agilant's conduct is Constitutionally protected and the ramifications of granting the relief will cause Agilant irreparable harm.

Plaintiffs are asking the Court to void contracts entered into between Agilant and its current staff. At this juncture of the litigation Plaintiffs have not been found as entitled to proceed as a collective class. No application has even been made as to any type of Rule 23 relief. The case is continuing as the Court has found that the bar for preliminary collective certification is a low one. Thus, down the road, if collective and class certification is denied, the voiding of the arbitration agreements today, will have been deemed retroactively improper.

Plaintiffs have labeled Agilant's implementation of the arbitration agreement policy as unconscionable. Plaintiffs use this term throughout their argument. Given the weakness of their legal arguments, by mislabeling a course of otherwise clearly lawful conduct, Plaintiffs attempt to instill a sympathy factor. At hand, Plaintiffs concede that had Agilant advised the employees of the pending litigation prior to asking the employees to sign the arbitration agreements, there would be no violation and then there would be no unconscionable conduct. Nonetheless, the First Amendment guarantees Agilant the right to not speak when it so chooses.

A few years ago the NLRB established a rule seeking to compel employers to post notices to employees concerning their NLRA rights. The proposed rule would impose penalties for failing to do post the notices. The rule was struck down before it even went into effect, causing the NLRB to rescind the rule. In striking down this regulation, Court of Appeals for the District of Columbia opined in N.A. of Mfrs. v. NLRB, 717 F3d 947,956 - 958 [D.C. Cir. 2013] held that the First Amendment protected the employers from having to engage in compelled speech. In summarizing the First Amendment right to remain silent the Court emphasized:

22

The right to disseminate another's speech necessarily includes the right to decide not to disseminate it. First Amendment law acknowledges this apparent truth: "all speech inherently involves choices of what to say and what to leave unsaid...

Chief Justice Roberts, writing for a unanimous Court, put it this way in Rumsfeld v. Forum for Academic & Institutional Rights, Inc.: "Some of [the] Court's leading First Amendment precedents have established the principle that freedom of speech prohibits the government from telling people what they must say...

In Barnette the Court held that "[t]o sustain the compulsory flag salute" and pledge of allegiance in public schools would be to conclude "that a Bill of Rights which guards the individual's right to speak his own mind, left it open to public authorities to compel him to utter what is not in his mind."

the First Amendment freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." 430 U.S. at 714. New Hampshire therefore could not coerce its citizens to display the State motto "Live Free or Die" on their automobile license plates, although presumably citizens could display it voluntarily. As the Supreme Court put it in United States v. United Foods, Inc.: "Just as the First Amendment may prevent government from prohibiting speech, the Amendment may prevent the government from compelling individuals to express certain views . . .." (Internal citations omitted)

Plaintiffs argue that even in the absence of an agreement between the parties concerning First Amendment communications with employees during a pending action, and even in the absence of any injunctive restrictions, that once an FLSA collective action is filed, the employers' hands are automatically tied precluding employers from engaging in otherwise absolutely lawful and First Amendment protected business practices vis a vis its current staff. Plaintiffs continue that the arbitration agreements would be lawful if accompanied by compelled or forced speech advising employees of the pending action. Plaintiffs are arguing that employers are free to require arbitration agreements from employees who are not potential collective plaintiffs, but must engage in discriminatory treatment of other employees merely because someone filed a lawsuit. Plaintiffs argue that employers must be forced to discriminate in the application of corporate policies if there is a pending uncertified collective class which is in its early litigation stage. As the case law demonstrates in operating its business Agilant cannot be compelled to

express any view as to the pending lawsuit and it has the Constitutionally protected right to simply remain quiet.

There remain serious factual issues concerning the merits of off-the-clock work claimed by the individual Plaintiffs and currently opted in plaintiffs. Do Plaintiffs truly believe, as they claimed in the prior motion papers, that unilateral emails sent at all hours of the night, between field technicians, and the hours of waiting time anticipating unilaterally inspired responses is compensable time? Does each Plaintiff truly believe that if they clock in late and clock out early, that they should nonetheless be paid for the full eight hours, and claim entitlement to overtime for the minimal time needed to read an after-hours email describing the following morning's assignments, which merely summarizes the communications received during regular working hours? Do the Plaintiffs really believe that they can lie on their arrival and departure times and still demand to be paid for falsified hours?

Agilant depends upon the honesty and integrity of its employees to properly log in and log out of their daily assignments. Agilant requires its employees to submit true and accurate time records of the hours worked each day. One of the plaintiffs was terminated for falsifying the same time records, which are the subject of his specific claims to overtime in this action. This former employee did not rebut these facts during the preliminary certification application process.

Agilant treats its staff as professional. In this day and age employees appreciate a flexible workday. Most employees have family obligations requiring their attention for various personal reasons including child care. Many employees need flexibility due to other commitments. Agilant has provided the flexibility based upon a perception that the minimal off-the-clock time, even if counted as work time, would not result in an employee performing more than eight hours

of work in any given workday.  The employee generated arrival times and departure times, as submitted in the context of the preliminary collective certification process, establish a work day significantly shorter than eight hours.  These records established that each employee has different assignments that of necessity vary their starting and ending times on a daily basis. However, in virtually no instance was an employee at an assignment after 3:00 p.m., when school is in session.

It is preferable for all parties that if employees really have a perceived claim for additional compensation, that the claim be raised with human resources, sooner, rather than later, and resolved, without having to file a Federal lawsuit. Even if the parties cannot resolve the dispute amicably, a quick and efficient arbitration, at virtually no cost to the employee, is more desirable than a Federal lawsuit, which as demonstrated herein requires a lot of time, expense and effort to bring to resolve.

Assuming the Court accepts Plaintiffs' arguments and affirmatively voids the arbitration agreements, what happens down the road?  What will be the parties' status if the class and collective certifications are denied?  The employees who have opted in to the lawsuit will be left in a dilemma.  They will not be part of this lawsuit and they will have no recourse under their arbitration agreements.   The voided arbitration agreements cannot be resuscitated retroactively. As the saying goes, "you can't unscramble an egg!"

## CONCLUSION

In summary, Plaintiffs lack standing to seek injunctive relief under the FLSA.  Equitable relief, if available at all, is limited by statute to the Secretary of Labor or the NLRB.  If the case is analyzed under Rule 23 case law, it assumes that there is State statutory basis that needs an

injunctive remedy.   The Supreme Court and the NLRB have forcefully held that this area is preempted by the NLRA.   The motion should be denied.

Dated: January 13, 2020

Raab, Sturm & Ganchrow, LLP

By: Ira A. Sturm
Attorneys for Defendant
2125 Center Avenue, Suite 100
Fort Lee, New Jersey 07024
201-292-0150
isturm@rsgllp.com