# THE LAW OFFICE of CHRISTOPHER Q. DAVIS
## WORKING SOLUTIONS NYC

September 23, 2020

**VIA ECF**

The Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18A
New York, NY 10007

      Re:    *O'Conner et al v. Agilant Solutions, Inc. et al*; Case No. 1:18-cv-06937 (SLC)

Dear Judge Cave,

This joint letter is submitted by Named Plaintiffs and FLSA Opt-in Plaintiffs (collectively "Plaintiffs") and Defendant Agilant Solutions Inc., ( "Defendant" or "the Company"), requesting that the Court approve the Settlement Agreement in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Settlement Agreement is appended hereto as Exhibit 1.

      **I.**    **The Settlement Agreement**

The Plaintiffs are all either current or former Field Service Technicians or Installers (referred to herein as "FSTs") employed by the Defendant within the Collective Period. Plaintiffs were all paid on an hourly basis and were thus entitled to receive time-and-one-half for all hours worked over forty in a week. The Plaintiffs job duties involved fixing hardware – computers and printers – for public schools within the New York City school system, pursuant to a contract that ASI has with the Department of Education ("DoE") to provide IT services. They were assigned work through a ticketing system whereby Plaintiffs would be assigned "tickets" with their assigned troubleshooting on-site assignments. The circumstances of the Plaintiffs' employment – the nature of the work, management, clients, timekeeping, etc. – was exactly the same regardless of whether they were directly employed or indirectly employed.

On August 2, 2018, the Named Plaintiffs filed a Class and Collective Action Complaint (the "Complaint") against Defendant in the Southern District of New York on behalf of all FSTs working for Defendant, either directly or indirectly. *See* Dkt. No. 2. The Complaint alleged violations of the FLSA and the NYLL. *See generally, id*. The Plaintiffs seek damages from Defendant for: (i) unpaid straight-time; (ii) unpaid overtime; (iii) violations of New York State wage-statement requirements; and (iv) failing to reimburse business expenses.

On May 16, 2019, Plaintiffs filed their Motion for Preliminary Certification of the FLSA Collective (the "FLSA Motion"). *See* Dkt, No. 46. On November 22, 2019, Judge Woods granted

Plaintiffs' request to conditionally certify an FLSA collective action consisting of FSTs who are currently employed by ASI or were previously employed for three years prior to May 15, 2019, either directly or indirectly, in New York City. *See* Dkt. No. 70. During this time, and continuing after the FLSA Motion was granted, the Parties engaged in robust fact discovery. This included the exchange of thousands of pages of policy documents, personnel files, timekeeping records, payroll records, and email correspondence. The Defendants also took depositions of the four Lead Plaintiffs and one opt-in plaintiff and Plaintiffs took one 30(b)(6) deposition.

Plaintiffs alleged in their Complaint, and believe discovery revealed, that Defendant failed to maintain an FLSA compliant timekeeping system, and instead paid the Plaintiffs according to their schedule hours, and not the hours they actually worked. During discovery it was determined that Plaintiffs generally completed their last ticket assignment around 3pm, when the schools closed, but were nonetheless paid until 5pm each day. Plaintiffs argued that they were considered "on call" until 5pm because they were expected to be within the vicinity of their assigned schools, had to have their phones on, be prepared to take work calls and emails, and were not able to have alcohol or participate in any activities whereby their phones were off before their shift ended at 5pm. Thus, Plaintiffs argued that any time worked by Plaintiffs after 5pm was uncompensated off-the-clock overtime. Alternatively, Defendant argued that the time between their last ticket assignment and 5pm was not compensable waiting time, and that any overpayment for hours not actually worked between 3pm to 5pm, would be credited against any time worked after 5pm. Defendant also argued that the time it took for Plaintiffs to complete their tech routes after 5pm was de minimus and not the 25+ minutes alleged by Plaintiffs.

After the close of discovery, and in light of the conflicting legal and factual arguments, the Parties elected, through their respective counsel, and with the assistance of a neutral mediator, to engage in good faith, arm's-length negotiations. Specifically, after negotiations over a period of several weeks between counsel, the Parties decided to participate in a non-binding mediation with an experienced neutral previously assigned from the Southern District of New York's mediator panel. At the conclusion of the mediation, the mediator made a mediators' proposal, which the parties could accept or reject. The Parties each accepted the mediator's proposal and arrived at a resolution that includes payment of a total of $150,000, inclusive of attorneys' fees and costs. The settlement agreement reflects a reasonable compromise of the *bona fide* disputed issues in this case, in particular Plaintiffs' claims and Defendant's denials of claims under the FLSA and NYLL regarding overtime, deductions and "gap time" claims. The agreement resolves only the claims for the Named and Opt-in Plaintiffs.

The Parties believe that the terms and conditions of the settlement are fair, reasonable, and in their mutual best interests in light of the documents and information exchanged by the Parties throughout discovery and in preparation for mediation. Also, Plaintiffs believe that the certainty of settlement is better than the uncertain outcome of extended litigation, and Plaintiffs prefer to receive a payment now without the delay and uncertainty that litigating the matter would entail.

## II. The Court Should Find the Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Courts approve FLSA

settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, 2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014) (the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). As Your Honor opined in *Guzman v. Toys Outlet Inc.*, 2019 US Dist LEXIS 222758 (S.D.N.Y. Dec. 30, 2019):

> Courts generally recognize a "strong presumption in favor of finding a settlement fair" in FLSA cases like this one, as courts are "not in as good a position as the parties to determine the reasonableness of a FLSA settlement." *Souza v. 65 St. Marks Bistro*, No. 15 Civ. 327 (JLC), 2015 U.S. Dist. LEXIS 151144, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (internal citation omitted).

In evaluating the proposed settlement, this Court should consider the totality of the circumstances, including the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the Parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

    A.    *Plaintiffs' Range of Possible Recovery*

The proposed settlement is substantial and is within the range of reasonableness of recovery when compared to the various possibilities of recovery in light of the documents and information produced by Defendants during discovery. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particular sum." *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal citations and quotations omitted).

Pursuant to the settlement agreement, Plaintiffs will receive, after attorneys' fees and costs and court approved service awards, a total of $90,000 (the "Net Settlement Sum"). The Net Settlement Sum will be distributed on a pro-rata basis based on Plaintiffs' weeks worked and rates of pay. Depending on each individual Plaintiff's length of employment, the Parties anticipate the settlement sums range from approximately $330[1] to $8,400, with a median settlement sum of approximately $2,700.

---

[1] The Plaintiff whose settlement sum is $330 worked for Defendant for only 2 months during the relevant time period with a rate of pay of $12.50 (the minimum wage at the time).

Based on Plaintiffs' Counsel's damages assessment and valuation of the underpayment, this settlement represents a recovery for the Plaintiff well within the range of reasonableness regarding their claims when compared with possible recoveries (*i.e.* whether the off-the-clock time should be calculated at a straight time or overtime rate, whether the time worked after 5pm was compensable at all or if overpayments from 3pm to 5 pm could be credited against those hours, and whether Plaintiffs' business expenses were for items primarily for business use rather than tools they could retain and use for personal use). In particular, Plaintiffs' counsel's estimated a range recovery for unpaid wages, exclusive of liquidated damages and interest, between approximately $70,000 and $250,000, with a very real possibility that the outcome at trial fell closer to the lower end of that range even assuming full liability since much of the unpaid time could have been calculated at straight time rate as opposed to a overtime rate. These calculations were performed using Plaintiffs' actual rates of pay at any given time, dates of employment to determine weeks worked, assumptions as to the amount of off-the-clock time worked, and assessments as to whether an overtime rate or straight time rate should be applied. Moreover, if it was determined that the off-the-clock time was not compensable (*i.e.* it was de minimus), or was otherwise captured by Defendant paying for waiting time from 3pm to 5pm, than the Wage Theft Prevention Act pay statement violations would not be recoverable at all because the basis for such claims was a theory that the pay statements were incorrect because they did not capture off-the-clock work.

> B. *The Extent To Which The Settlement Will Enable The Parties To Avoid Anticipated Burdens And Expenses In Establishing Their Respective Claims And Defenses And The Seriousness Of The Litigation Risks Faced By The Parties*

A settlement avoids a trial on the merits that would have an uncertain potential outcome. *See Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In reviewing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiffs against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

In light of these factors, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter, which largely relate to whether payment for hours not actually worked or for "waiting" may be used to off-set alleged underpayment for hours worked off-the-clock and the total number of off-the-clock overtime and/or straight time hours actually worked each week. While Plaintiffs' counsel anticipates favorable outcomes at trial and appeal, the nature of jury trial and appellate practice is inherently uncertain and lengthy.[2] The settlement eliminates these risks. In addition, the settlement eliminates the need for a trial which might interfere with the Plaintiffs' current work schedules.

---

[2] Defendants' counsel disagrees that Plaintiffs would be successful at trial and/or appeal but agrees that the litigation risks are inherently uncertain and expensive and that a settlement here caps those risks and allows the parties to move on.

Furthermore, the email correspondence, pay records, and timekeeping records produced by Defendant during discovery showed that the purported underpayment of wages alleged in the Complaint was likely lesser amount than their counsel had initially estimated. The email records were carefully reviewed and analyzed to estimate the time it took to for FSTs to create and produce their tech routes each evening, which was the bulk of the off the clock claims. It was determined that the records justified an assumption of only about 25 minutes a day. Accordingly, there is little for Plaintiffs to gain by continuing to litigate this case through trial as Defendant is providing them with a reasonable settlement amount given their potential recovery in light of the documents produced by Defendant during discovery. Moreover, there is a possibility in losing at summary judgment if the Court were to find that the time was not compensable as de minimus or already paid during the "waiting" time, risking a possibility of no recovery whatsoever. There is also the risk that the Court de-certifies the Collective Action, delaying any possible recovery by requiring each Opt-in Plaintiff to re-file their claims and litigate individually.

Without admitting any liability or wrongdoing, Defendant is making a business decision to enter this settlement and forego litigation over disputed issues of law and fact to bring an early and cost-effective resolution to this matter and avoid continued litigation costs and the uncertain nature of extended litigation.

On the other hand, Plaintiffs are willing to resolve their claims because they will receive immediate partial payment and will avoid the uncertainty of summary judgment motion practice, de-certification, and possibly a trial. In Plaintiffs' counsel's assessment, after a thorough review of the facts and law, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims. Weighing the benefits of an almost immediate, guaranteed payment to the Plaintiffs against the risks and burdens associated with proceeding with a lengthy litigation, the settlement is reasonable, and these factors weigh in favor of approval.

      C.     *Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). Importantly, a settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process*." See Johnson v. Brennan*, 10 Civ. 4712 CM, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011); (citations omitted); *see also In re Penthouse Executive Club Compensation Litigation*, No. 10 Civ. 1145 at *2, 2013 WL 1828598 (S.D.N.Y. April 30, 2013) (granting preliminary approval in part based on participation of neutral mediator). The Parties engaged in robust discovery and participated in settlement discussions to arrive at the attached settlement. At all times, the Parties' negotiations were on an arms'-length basis by attorneys well-versed in wage and hour litigation and with the assistance of a neutral court appointed mediator similarly experienced in this area of the law. In fact, a settlement was not reached until after the mediator

presented a mediator's proposal. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

        D.      *Possibility of Fraud or Collusion*

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients throughout the negotiations on the benefits and risks of continued litigation.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. Thus, there was no fraud or collusion between counsel, and as such, the Settlement Agreement should be approved.

**III.    Plaintiffs' Counsel is Entitled to a Reasonable Fee of $45,000.**

Under the Proposed Settlement Agreement, Plaintiff's attorneys' fees and costs are forty-five thousand dollars ($45,000). Plaintiffs' counsel submits that the requested fees and costs are reasonable. A court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010). Here, Plaintiffs' attorneys are seeking fees and costs combined representing thirty percent (30%) of the settlement sum.

Pursuant to the written retainer agreement between The Law Office of Christopher Q. Davis, PLLC (the "Firm") and the Plaintiffs, attached hereto as Exhibit 2, Plaintiffs agreed that the Firm would represent them on a contingency basis in an attempt to recover unpaid wages and that the Firm would either retain 33% of any gross recovery or the full amount of any Court-awarded attorneys' fees, plus the actual costs and disbursements incurred by the Firm. *See* Exhibit 2 at ¶¶ 3, 12.

The actual costs and disbursements incurred by the Firm in this case total $15, 947.81 as of the date of this letter. An itemized list of these costs and disbursements are attached to this letter as Exhibit 3.[3] Plaintiffs' counsel has agreed, for settlement purposes only, to forgo reimbursement of their actual costs and to lower their fee from 33% to 30%. The actual lodestar amount in this matter is calculated at approximately $118,000. The time records containing the lodestar amount

---

[3]      Defendants take no position on Plaintiffs' Counsel's time records or the calculation of their fees but agree that under the circumstances of this case that the settlement, including its provision for attorney's fees, should be approved by the Court.

for this matter are attached hereto as Exhibit 4. The lodestar amount was calculated using the following hourly rates:

- Christopher Davis: $500
- Rachel Haskell: $375 to $425[4]
- Mariyam Hussain: $400
- Katherine Klein: $200
- Law Clerk/Paralegal: $100

For non-contingency matters, the firm typically bills out at higher rates for the attorneys as well as support staff.

Courts usually apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* (citation omitted); *see also Parker, v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (endorsing the *Goldberger* "cross check[]"). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Morgan Stanley, et. al.*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citation omitted). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id*.

In this District, hourly rates of approximately $500 for partners, $300-$400 for senior associates, $100-200 for junior associates and $75-$100 for law clerks have been awarded in employment cases. *See e.g. Williams v. Epic Security Corp.*, 368 F.Supp.3d 651, 658 (S.D.N.Y., 2019 (court found that $ 600 hourly rate for a partner was reasonable and is consistent with other cases in this district); *Powell v. Metro One Loss Prevention Servs. Grp.*, 12-CV-4221 (LAP) (DF), 2015 WL 9287121, at **2-3 (S.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (setting hourly rate for senior partner in employment case at $ 650); *Calle v. NDG Coffee Shop, Inc.*, 16-cv-7702 (RJS), 2018 WL 1779347, at *2 (S.D.N.Y. Apr. 12, 2018) (approving associates with 5 years' experience at $375 each); *Rosendo v. Everbrighten Inc.,* No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *8-9 (S.D.N.Y. Apr. 7, 2015) (citing hourly rates approved for attorneys from another small firm specializing in wage and hour litigation between $200 and $425), *adopted by* 2015 WL 4557147 (S.D.N Y, July 28, 2015); *Guallpa v. N.Y. Pro Signs Inc.,* No. 11-cv-3133 (LGS) (FM), 2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014) (same, observing a range of $350 to $600 per hour), *adopted by* 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).

---

[4] Rachel Haskell was promoted to partner during the pendency of this litigation. Her rate increased after she was made a partner in the firm.

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved." *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Parker*, 2010 WL 532960, at *2. Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26,2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.,* No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb.24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Zeltser v. Merrill Lynch & Co.,* No. 13 CIV. 1531 FM, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (awarding 5.1 multiplier); *In re RJR Nabisco, Inc. Sec. Litig.,* No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug.24, 1992) (awarding multiplier of six). Here, Plaintiffs' counsel is not seeking a multiplier and in fact, is accepting more than half their lodestar to date because they believe this settlement is fair and reasonable and that a swift resolution is in the best interest of the Plaintiffs.

The Plaintiffs have been represented by The Law Office of Christopher Q. Davis, PLLC, a firm that almost exclusively practices plaintiff-side labor and employment law. Christopher Davis has been practicing law for 19 years with a primary focus on litigation of labor and employment law cases. From 2001 to 2006, Mr. Davis was employed as an Assistant District Attorney in the Manhattan District Attorney's Office where he tried approximately 20 felony and misdemeanor cases to verdict. Following his tenure as an Assistant District Attorney, Mr. Davis entered private practice as an Associate with the employment law firm Thompson Wigdor LLP ("TW"), now Wigdor LLP, assuming responsibility over several plaintiffs and management-side lawsuits. After leaving TW in 2009, Mr. Davis joined The Ottinger Firm, P.C., and served as the firm's Managing Attorney and was responsible for all aspects of the firm's operations, including managing and serving as lead attorney on numerous nationwide class and collective actions. Mr. Davis left the Ottinger Firm to become the Partner of the Employment Practice at Stoll, Glickman & Bellina and then on July 2014, he left SGB to start his own practice, The Law Office of Christopher Q. Davis, PLLC. Throughout his career Mr. Davis has been appointed class counsel on numerous class and collective actions, including but not limited to: *Bryan, et al. v. Urban Telecommunications, Inc., et al.*, 12-CV-2186 (SDNY); *Oleniak et al. v. Time Warner Cable, Inc. et al.*, 1:12-cv-03971(KPF) (SDNY)*Alexander et al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (EDNY); *Hibbert et al. v. Central Parking Systems, Inc.*, 1:12-cv-07970-VSB (SDNY); *Hartley et al v. Wells Fargo & Company et al*, 2:14-cv-05169 (EDNY); *Lobbe v. Cablevision System Corp., et al.*, 1:16-cv-02207-AKH (SDNY); *Villegas v. Cablevision Systems Corp., et al*, 1:17-cv-05824-VMS (EDNY); *Watson v. Cablevision Systems Corp., et al*, Index No. 502848/2018 (Kings Cty Sup); *Bannerman v. Air-Sea Packing Group Inc., et al* Case No. 18-cv-6146 (SDNY); and *Park et al v. FDM Group Inc.*, :16-cv-01520-LTS-SN (SDNY).

Rachel Haskell is a Partner at The Law Office of Christopher Q. Davis and previously worked for Mr. Davis at Stoll, Glickman & Bellina, LLP exclusively in the Firm's Employment Litigation Practice. She has been practicing law for 8 years, is licensed both in New York and

Massachusetts and has focused her practice exclusively on labor and employment law. Ms. Haskell has experience working on employment matters both in private practice and prior to entering private practice while interning with the U.S. Equal Employment Opportunity Commission. Ms. Haskell has been the senior associate on numerous wage and hour cases, including both individual cases such as this as well as class and collective actions, including but not limited to, *Oleniak et al. v. Time Warner Cable, Inc. et al.*, 1:12-cv-03971(KPF) (S.D.N.Y.); *Jacobs et al v. Major Energy Services LLS/Respond Power LLC et al.*, 2012-CV-04842 (E.D.N.Y.); *Alexander et. al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (E.D.N.Y.); *Park v. FDM Group Inc.*, 1:16-cv-01520-LTS (S.D.N.Y.); *Hartley et al v. Wells Fargo & Company et al*, 2:14-cv-05169 (E.D.N.Y.); and *Lobbe v. Cablevision System Corp., et al.*, 1:16-cv-02207-AKH (S.D.N.Y.).

Mariyam Hussain is a former attorney with The Law Office of Christopher Q. Davis. Prior to working at the firm Ms. Hussain worked at the New York City Commission on Human Rights where she investigated and prosecuted employment discrimination cases. She has been practicing law for 9 years and is licensed both in New York and Illinois. Ms. Hussain's practice focused exclusively on labor and employment law. During her time at with the firm, Ms. Hussain was a senior associate on number of wage and hour cases, including both individual cases and class and collective actions, including but not limited to, *Park v. FDM Group Inc.*, 1:16-cv-01520-LTS (S.D.N.Y.), a hybrid action with nearly 2,000 Class Members, *Bannerman v. Air-Sea Packing Group Inc., et al.*, 1:18-cv-06146 (S.D.N.Y), and *Rotari et al v. Mitoushi Sushi, Inc. et al;* Case No. 1:19-CV-05182-BMC (E.D.N.Y.).

Katherine Klein is a former attorney with The Law Office of Christopher Q. Davis. Ms. Klein has been practicing law for 1 year and is licensed in New York. Ms. Klein's practice focused exclusively on labor and employment law. During her time at with the firm, Ms. Klein was a junior associate on various wage and hour cases, including both individual cases and class and collective actions, including but not limited to, *Park v. FDM Group Inc.*, 1:16-cv-01520-LTS (S.D.N.Y.), a hybrid action with nearly 2,000 Class Members, and *Rotari et al v. Mitoushi Sushi, Inc. et al;* Case No. 1:19-CV-05182-BMC (E.D.N.Y.).

**IV.      Conclusion**

For the reasons set forth above, the Parties respectfully request that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorneys' fee award as fair and reasonable.

Should you have any questions, please do not hesitate to contact us.

Sincerely,

/s/

Rachel M. Haskell, Esq.
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703

New York, New York 10004
646-430-7930 (main)

cc: All Counsel (via ECF)